PEDRO CASASNOVAS ARBONA, como padre con patria potestad sobre su menor hijo legítimo, PEDRO J. CASASNOVAS DIAZ, demandante y apelado, *v.* THE PONCE ELECTRIC COMPANY, demandada y apelante.

No. 4181.—*Visto:* Junio 15, 1927. *Resuelto:* Abril 30, 1928.

*Hartzell, Kelly & Hartzell* y *R. F. Fernández,* abogados de la apelante; *Arjona & Arjona,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Pedro Casasnovas, como padre con patria potestad sobre su hijo Pedro Antonio Casasnovas Díaz, entabló demanda contra The Ponce Electric Co., una corporación organizada de acuerdo con las leyes de Puerto Rico, que se dedica al negocio de transporte de pasajeros por vehículos de motor, en reclamación de treinta mil dólares por daños y perjuicios.

Después de resolverse algunas cuestiones previas, fué el pleito a juicio. La corte dictó sentencia favorable al demandante condenando a la demandada a pagarle dos mil dólares, con más las costas y honorarios de abogado. No conforme la demandada, apeló, señalando en su alegato la comisión de seis errores.

El primer señalamiento se formula así: "La corte de distrito cometió error al declarar sin lugar, en algunos extremos, la moción eliminatoria interpuesta contra la demanda original."

En efecto, se presentó una moción eliminatoria por virtud de la cual se pidió a la corte que excluyera de la demanda las siguientes alegaciones: "teniendo ambas partes la necesaria capacidad legal para demandar y ser demandadas" y "por ser menor de edad," por tratarse de conclusiones legales, y, además, la llamada segunda causa de acción, por ser contraria a la regla que dice que todos los daños que pueda sufrir una persona a consecuencia de un solo acto culpable, darán lugar a una sola causa de acción. La corte negó la petición.

En su alegato la parte apelada se limita a contestar que,

como aparece del mismo señalamiento de error, la moción eliminatoria de que se trata se presentó en relación con la demanda original y que habiéndose presentado una demanda enmendada y no habiéndose renovado la petición, no hay derecho para discutir la cuestión en este tribunal.

Es bien sabido que una demanda enmendada toma el lugar de la original, y una vez que es archivada, la original cesa de cumplir ulterior función alguna como tal alegación. Existen excepciones a la regla, que no comprenden el caso de la apelante. Véase *Vellón* v. *Central Pasto Viejo,* 37 D.P.R. 569, 572.

De todos modos, aún reconociendo que la parte demandada tuviera razón y que debieron haberse decretado las eliminaciones por ella pedidas, el error cometido por la corte al negarlas no se ha demostrado que fuera perjudicial y por tanto que pudiera servir de base a la revocación de la sentencia. Lo que a continuación diremos, hará aún más clara esta conclusión.

Sostiene la parte apelante que la corte sentenciadora erró al declarar que la demandada no probó negligencia por parte de Pedro A. Casasnovas Díaz.

Cita el siguiente párrafo de la opinión que sirvió de base a la sentencia recurrida:

"Se ha insistido por la demandada en que el hijo del demandante fué culpable de negligencia y que a ésta se debió el accidente por haber tratado de montar en la guagua mientras estaba en movimiento. La obligación de probar la negligencia contributoria del demandante incumbía a la demandada (*Maldonado* vs. *Hamilton,* 32 D.P.R. 232; *González* vs. *Malgor, Luiña & Cía.,* 29 D.P.R. 106) y la corte considera que la demandada no ha probado tal negligencia por parte del demandante."

Y argumenta que no acierta a comprender cómo pudo la corte llegar a esa conclusión cuando presentó cinco testigos presenciales cuyas declaraciones demuestran que la negligencia por parte de Casasnovas existió.

La corte no dice que no se presentara prueba sobre la negligencia de Casasnovas sino que "la demandada no ha probado tal negligencia." El error no existe.

■ En el tercer señalamiento se sostiene que la corte resolvió erróneamente el conflicto de la prueba.

En su opinión la corte sentenciadora considera probados los siguientes hechos:

"Que el 31 de octubre de 1925 el hijo del demandante, Pedro Antonio Casasnovas Díaz, de veinte años de edad, como a las 9 de la noche, se encontraba en la calle de la Villa, cerca de la esquina de la calle del Progreso, de esta ciudad, en compañía de Pastor Medina, con quien había salido del cine poco antes; que estaban parados con otras personas mirando un baile que se celebraba en la casa de la familia Salinas; que en esos momentos venía por dicha calle de la Villa y en dirección hacia el Hipódromo de Ponce, una guagua de la compañía demandada, guiada por el chofer Pedro Sierra, y en la cual viajaban muchos pasajeros, y entre ellos, el policía insular Segundo Pacheco, que estaba parado al lado del chofer; que el hijo del demandante, saliendo del grupo en que se encontraba, hizo señal con la mano al chofer de la guagua para que parara y éste, obedeciendo dicha señal, redujo la velocidad y paró el vehículo, y entonces el hijo del demandante trató de montar en la guagua, poniendo un pie en el estribo de la única puerta que tiene dicho vehículo y que está situada en la parte delantera derecha; pero que en ese mismo momento la guagua arrancó súbitamente, lo que ocasionó que el mencionado Pedro A. Casasnovas Díaz perdiera el equilibrio y cayera al suelo, siendo cogida o atrapada su pierna derecha por la rueda trasera derecha de la guagua; que la rueda del mencionado vehículo no le pasó por encima al hijo del demandante, sino que únicamente lo arrastró; que el hijo del demandante se levantó del suelo subiendo, con ayuda de otras personas, a la misma guagua, la cual continuó su viaje hasta el hipódromo, y a su regreso al pueblo, fué llevado el hijo del demandante al hospital San Lucas, donde fué asistido por el doctor Costas, quien encontró que el mencionado joven no había sufrido fractura alguna en la pierna, pero sí había recibido un golpe o magullamiento, o, según declaró el doctor Costas, una contusión severa, la cual produjo una hinchazón en la pierna, con derrame interno de sangre y paralización de la circulación, lo cual ocasionó una falta de nutrición en dicho sitio, el cual se ence-

faló; que después de las primeras curaciones el hijo del demandante continuó en dicho hospital cinco días, cuando fué trasladado a su casa, donde siguió asistiéndolo el doctor Costas en unión del doctor Osvaldo Goyco; que hubo necesidad de cortar los tejidos muertos en el sitio donde recibió la contusión en la pierna (cuya contusión puede verse gráficamente en las fotografías presentadas y admitidas en evidencia por la corte); que dichos tejidos fueron sustituidos por tejido cicatricial, pues según la declaración de los médicos mencionados, hubo el peligro para el hijo del demandante de una emboglia y de que sobreviniera la gangrena; que aún cuando la contusión recibida por el hijo del demandante no le fracturó la pierna, es un hecho que la corte considera probado, que ha sufrido intensos dolores físicos y se ha tenido que someter a extensos tratamientos médicos, teniendo en la fecha del juicio, y según declararon todos los peritos médicos, tanto del demandante como de la demandada, disminuída su capacidad de flexión y extensión en la pierna lesionada en un veinte o veinticinco por ciento.''

Se refiere luego la corte a una nueva prueba pericial practicada y dice:

''Toda esta nueva prueba pericial reafirma y ratifica la conclusión a que ha llegado la corte, de que aún cuando Pedro A. Casasnovas Díaz no sufriera fractura alguna en su pierna, no hay duda alguna de que recibió una contusión de carácter grave que aún al año de ocurrir el accidente le obliga a guardar cama, sufriendo agudos dolores y teniendo que someterse a tratamiento médico, y que cuando puede levantarse y salir, se ve obligado a usar muletas, teniendo sus facultades de extensión y flexión de la pierna lesionada disminuidas en un veinte por ciento, si no de una manera permanente, sí por tiempo que según los peritos, se considera indefinido.''

Viene entonces el párrafo que se copió al discutir el segundo señalamiento de error y continúa la corte diciendo:

''La corte ha resuelto el conflicto de la evidencia que existe en este caso a favor de lo que han declarado los testigos del demandante, por considerar que éstos estaban en mejores condiciones de apreciar la forma en que ocurrieron los hechos por haber estado situados en la calle y frente al sitio del accidente, mientras que todos los testigos de la demandada, con excepción de uno, eran pasajeros que viajaban dentro de la guagua y no podían estar en iguales

condiciones para ver los detalles del caso. Es más, la declaración de los testigos de la propia demandada, Pedro Sierra, el chofer, y el policía insular Pacheco, que viajaba en la guagua, parado al lado del chofer, ratifican la prueba del demandante y la corroboran en parte. Declaró el chofer Sierra que al acercarse al sitio del accidente 'salió un joven a coger la guagua pero que no le vió hacer señal alguna.' ¿Si no le vió hacer señal alguna, por qué dice que salió a coger la guagua, y que fué el policía quien le llamó la atención del accidente, como declaró poco después? Y declaró el policía Pacheco: 'que él observó que Casasnovas Díaz le hizo señal de parada al chofer y que éste entonces redujo la velocidad;' y que fué entonces que el hijo del demandante trató de coger la guagua y se cayó. Si el policía, que iba precisamente al lado del chofer, vió cuando el hijo del demandante hizo la señal de parada al chofer, ¿es de aceptarse como cierto que dicho chofer no lo viera cuando el policía dice que el chofer redujo la velocidad de la guagua? Estimamos que no. Tampoco ha merecido crédito a la corte la aseveración del chofer y del policía de que la única puerta de la guagua estaba cerrada, pues es increíble que ninguna persona trate de subir a un vehículo, bien esté parado, y menos si está en movimiento, si la única puerta por donde ha de subir está cerrada.''

El abogado de la parte apelante en su alegato analiza la prueba practicada en relación con la declaración de hechos probados y las razones expuestas en su opinión por el juez sentenciador, de modo realmente admirable. Sin embargo, después de un cuidadoso estudio de los autos y de una amplia discusión en el seno del tribunal, no nos sentimos autorizados para decidir que la corte sentenciadora abusara de su discreción al resolver el conflicto de la prueba a favor del demandante. La dicha corte expresó en su opinión con claridad el proceso mental que siguiera, y puede que esté equivocada en alguna de sus consideraciones, pero en el fondo lo que existe es una cuestión de credibilidad de los testigos, de convicción por parte del juzgador, y repetidamente hemos dicho que el tribunal que juzga directamente el caso está en mejores condiciones que nosotros para formar esa convicción.

Por el cuarto error se levanta una interesante cues-

tión de evidencia. Sostiene la apelante que la corte erró al no admitir la declaración del testigo Julio Arce presentado por la demandada para probar la costumbre del demandante de abordar las guaguas de la demandada mientras iban en movimiento.

Toda la fuerza del argumento de la apelante descansa en el razonamiento de la Corte Suprema de California en el caso de *Craven* v. *Central Pacific R. R. Co.*, 72 Cal. 345.

La parte esencial de dicho razonamiento es así:

"No existe duda alguna respecto a la regla general aplicable a casos criminales de que al juzgarse a un acusado por determinado delito no puede presentarse prueba de la comisión por parte de él de otros delitos. La misma regla parece ser aplicable a casos civiles cuando se trata de demostrar que algún acto específico fué cometido maliciosamente o que se realizó intencionalmente con algún fin definido, y no negligentemente y siguiendo una costumbre. Pero en ausencia de cualquier cuestión de intención criminal, o de intención alguna, el hecho a determinar es si una persona realizó o no cierto acto, o lo hizo en determinada forma; y si la prueba directa respecto a tal hecho es contradictoria, entonces puede admitirse prueba para demostrar que esa persona acostumbraba realizar el acto en cuestión, o que estaba acostumbrada a hacerlo en determinada forma. Si fuera de la corte se llamara a un hombre sensible para que determine si cierta persona en cierta ocasión había saltado negligentemente de un tren en movimiento, y si se encontrara que la prueba directa sobre ese punto es contradictoria, su declaración daría, naturalmente, algún peso al hecho de que la persona tenía la costumbre de descender de los carros en esa forma. Y la consideración de tal hecho en casos semejantes al presente frecuentemente ha sido sancionada por los tribunales. La prueba, por lo menos tendía en algo a demostrar que la conducta de la demandante al tiempo de recibir el daño fué la que le imputó la demandada."

Parece conveniente referirnos a como ocurrió el incidente en este caso. Según consta del record la parte demandada presentó al testigo Arce y después de algunas preguntas preliminares continuó el interrogatorio así:

"P.—¿Usted conoce a este joven, testigo?—R.—Sí, señor.—P.—

¿Cómo se llama él?—R.—De apellido Casasnovas, de nombre no sé.—
P.—¿Usted lo ha visto antes?—R.—Sí, señor,—P.—¿Usted conocía a
este joven antes de octubre de 1925?—R.—Cómo no, hace tiempo
que lo conozco.—P.—¿El acostumbraba correr en las guaguas de la
compañía, usar esas guaguas?—R.—Bastante, con frecuencia.—P.—
¿Estando usted de servicio en esas guaguas ha montado él?—Bastan-
tes veces montó conmigo?—P.—Dígale a la corte en qué forma acos-
tumbraba este joven coger esas guaguas.—R.—Pues en las veces que
yo estaba de servicio, había veces que se paraba y mandaba parar
la guagua.''

Se opuso el demandante a que el interrogatorio siguiera.
Se suscitó una discusión entre los abogados sobre la cuestión
legal envuelta y la corte decidió a favor del demandante.
Se retiró el testigo y la parte demandada anotó su excepción.

La jurisprudencia sobre la materia es abundantísima. La
cuestión se ha suscitado bajo circunstancias varias y ha ocu-
pado la atención de los tribunales muchas veces. Como
todas aquellas que están en la línea divisoria, su decisión
ha sido motivo de dudas, influyendo siempre en cada caso
las circunstancias concurrentes. No puede negarse que lo
hecho en ocasiones anteriores, puede arrojar mucha luz sobre
lo ocurrido en el caso actual que se investigue, pero la expe-
riencia demuestra que es muy arriesgado medir por el
patrón del pasado la ocurrencia del presente. No puede
aceptarse la regla como infalible, y darle entrada en la
práctica de las pruebas como una cuestión de derecho, quizá
produciría más mal que bien. A lo sumo la admisión o no
admisión debe dejarse a la discreción de la corte ejercitada
de acuerdo con las circunstancias peculiares de cada caso.

Analizadas las que en éste concurren a la luz de ese cri-
terio y de la jurisprudencia sobre la materia cuyo resumen
tomamos de *Corpus Juris* no puede concluirse que la corte
de distrito errara al actuar en la forma en que lo hizo.

Dice la jurisprudencia así:

''Aunque está complicada por el ejercicio de la voluntad, es aún
una cuestión de experiencia, demostrada por la creación de una cos-

tumbre, y, en su consecuencia, del carácter, que una persona es menos propensa a hacer que a no hacer bajo circunstancias similares, lo que ha hecho antes. Puede igualmente deducirse de la experiencia que a medida que se elimina la voluntad, idéntica conducta resulta de estímulos similares, pues al igual que en otras partes del mundo natural, causas similares producen efectos similares, la comisión de actos parecidos o la ocurrencia de acontecimientos similares son hasta ese punto probatorios en una controversia sobre si determinado acto fué realizado por la misma persona o si ocurrió algo en cualquier otro tiempo. Pero la experiencia también demuestra que la inferencia carece de fuerza de por sí; que los hombres invariablemente o aún en la gran mayoría de los casos no hacen lo mismo que han hecho antes, cuando las circunstancias son aparentemente similares; y que aún con más frecuencia la ausencia de un elemento anterior o la presencia de un nuevo factor en una combinación de causas psicológicas o físicas son suficientes para producir un resultado muy distinto. Las cortes han creído que en tales casos no podría permitirse que el jurado tome en consideración para nada esa inferencia sin darle importancia indebida; que mientras tuviera algún peso la consideración de actos u ocurrencias similares, el mismo sería apreciado excesivamente. También se han dado cuenta del inconveniente práctico de juzgar un número de cuestiones colaterales a la vez y del daño de dilatar los juicios, sorprendiendo, y tal vez perjudicando, a los litigantes, permitiendo que se presente prueba con la intención de aturdir al jurado y de inducirlo a error. De ahí que exista la regla de que cae dentro de la discreción de la corte, excepto bajo circunstancias especiales, rechazar prueba de actos u ocurrencias anteriores para demostrar que se realizó determinado acto o que ocurrió cierto acontecimiento. Sin embargo, las razones que existen para esta regla administrativa limitan el alcance de la regla misma. Cuando la prueba es pertinente, no existe una prohibición tan absoluta contra su admisión, como la que existe cuando se ofrece una declaración no jurada como prueba de los hechos alegados. La admisibilidad de la prueba en lo que a su pertinencia se refiere, varía según su grado de peligro o de utilidad, aumentando de conformidad con su pertinencia y con la probabilidad de que pueda obtenerse otra prueba mejor o de que se induzca a error al jurado, a medida que la prueba ofrecida sea más floja, y disminuyendo en cambio según disminuya su pertinencia o aumente la probabilidad de obtener mejor prueba o la posibilidad de que el jurado sea inducido a error. Por ejemplo, la dificultad relativa a levantarse

cuestiones colaterales es una puramente de práctica. No hay regla alguna de derecho que prohiba juzgar tales cuestiones, y cae dentro de la discreción de la corte permitir que se haga en determinado caso, estando tal discreción sujeta a revisión si se abusare de ella.

"La regla general es que la ley no tomará en consideración prueba de que una persona ha realizado determinado acto en un momento dado para probar la contención de que ella ha cometido un acto similar en otro momento. Por consiguiente, no puede probarse, para demostrar que ha habido negligencia en determinada ocasión, que la persona cuya conducta está envuelta ha tenido un número de accidentes similares o que ha sido culpable de negligencia en otras ocasiones, especialmente cuando esos acontecimientos han sido muy remotos; y, a la inversa, uno no puede demostrar que fué cuidadoso en determinada ocasión mediante prueba de haber sido cuidadoso y prudente en otras ocasiones." 22 Corpus Juris 743.

Por el quinto error se sostiene que la corte al fijar la indemnización tuvo en cuenta gastos que no fueron alegados ni probados por el demandante, lo que es contrario a la jurisprudencia que establece que

"Como regla general, gastos pagados o incurridos por razón del acto negligente se consideran como daños especiales que deben alegarse para que puedan ser probados." 17 C. J. 1017.

Después de analizar cuidadosamente el caso y de estudiar varias de las decisiones sobre la materia, la corte sentenciadora dijo en su opinión:

". . . . los daños sufridos por el hijo del demandante en su pierna en la forma que se ha descrito anteriormente en esta opinión, unido a lo que ha dejado de ganarse y gastos que ha tenido, tiene derecho a una compensación de $1,000, y asimismo que por los dolores físicos sufridos en su larga curación y su angustia mental, así como por el estado en que aún se encuentra el lesionado, que también son elementos que deben ser considerados por la corte (Carrero vs. Morales, 34 D.P.R. 336), tiene derecho a una compensación adicional de $1,000.00."

Las palabras que dejamos subrayadas son las que dan origen al señalamiento de error.

Aparte de que aún prescindiendo del elemento "gastos,"

sería siempre razonable la indemnización concedida, es lo cierto que en la demanda se alega que el demandante tuvo que asilarse en el Hospital de San Lucas y someterse a intervenciones médico-quirúrgicas para las cuales hubo necesidad de obtener radiografías, que usa muletas y tuvo que comprar drogas para su curación, y ello es bastante.

En cuanto a la prueba, aunque pudo en verdad ser más específica, demuestra la existencia de los hechos alegados y aporta por lo menos la base necesaria para apreciar que hubo gastos.

El caso de *Carrero* v. *Morales,* 34 D.P.R. 336, citado por la corte sentenciadora como autoridad para la segunda parte de la indemnización, puede también invocarse para sostener la primera. Pero repetimos que la cuestión carece de importancia porque la sentencia se sostiene aunque se eliminara el elemento ''gastos'' por no haber sido debidamente alegado y probado.

■ Por último, en el sexto error se impugna la concesión de costas. Toda la cuidadosa consideración del caso que hemos hecho nos lleva a concluir que tampoco estamos en condiciones de decidir que la corte sentenciadora abusara de su poder discrecional al imponer a la demandada el pago de las costas del litigio.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Sr. Texidor no intervino.