FELIPA RIVERA, demandante, apelante y apelada, *v.* FORTUNA MAZARREDO, EMILIO OLABARRIETA y UNITED STATES FIDELITY & GUARANTY Co., demandados, apelados y apelante el segundo.

Núm. 8067.—*Sometido:* Marzo 5, 1941. *Resuelto:* Abril 5, 1941.

*Carlos Santana Becerra,* abogado de la demandante apelante; *Géigel & Silva,* abogados de los demandados y apelados y del demandado apelante.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

En este caso sobre daños y perjuicios, la Corte de Distrito de San Juan dictó sentencia por la que declaró con lugar la demanda y condenó al codemandado Emilio Olabarrieta a pagar a la demandante Felipa Rivera la suma de $3,000 más las costas y $300 de honorarios de abogado, y desestimó la demanda en cuanto a los codemandados Fortuna Mazarredo

434

y United States Fidelity & Guaranty Company, habiendo la demandante apelado de este último pronunciamiento y el co-demandado Olabarrieta de la sentencia en su contra. Por convenio de las partes ambos recursos han sido acumulados y los resolveremos conjuntamente.

La demanda alega, en síntesis, que la demandante es madre legítima y única heredera de Tomás Rodríguez, quien falleció en San Juan el 21 de noviembre de 1937, sin dejar descendientes legítimos ni naturales ni otro ascendiente que la demandante; que los codemandados Fortuna Mazarredo y Emilio Olabarrieta son madre e hijo y dueños de varios negocios, entre ellos el de transporte de carga, para lo cual mantienen una empresa pública y utilizan un *truck* de su propiedad marca "Ford", tablillas número HP–711, atendiendo dicha empresa personalmente el codemandado Emilio Olabarrieta; que dicho truck fué asegurado en octubre de 1937 contra accidente por la otra codemandada United States Fidelity & Guaranty Co.; que el día 21 de noviembre de dicho año, a las seis y media de la mañana dicho truck mientras era conducido por su dueño Emilio Olabarrieta por la calle Tapia de Santurce en dirección de sur a norte, arrolló al hijo de la demandante, Tomás Rodríguez, quien caminaba en la misma dirección por su derecha, produciéndole heridas graves y entre ellas la fractura del cráneo, que le ocasionaron la muerte momentos después; que el hijo de la demandante caminaba por el extremo derecho de la calle sobre una franja de terreno no pavimentada y que la causa del accidente fué la negligencia del codemandado Emilio Olabarrieta quien, por su impericia al manejar vehículos pesados de motor, al desviarlo súbitamente hacia la derecha para no meterse en un pequeño hoyo que había en el centro de la calle lo hizo con tal grado de negligencia y falta de cuidado que arrolló a Tomás Rodríguez, que iba de espaldas al vehículo, con la caja del mismo; que Rodríguez tenía de 40 a 45 años de edad, gozaba de buena salud, era comerciante dedicado al negocio de tienda y cafetín, en cuyo negocio se ganaba dia-

riamente un promedio de tres a cuatro dólares, siendo el único sostén de su madre la demandante, de una hermana y una sobrina y que, como consecuencia de su muerte la demandante ha sufrido angustias mentales, sufrimientos físicos y morales y daños pecuniarios que estima en $15,000.

Los demandados presentaron mociones de especificaciones y de eliminación y excepciones previas de indebida acumulación de parte demandada y de falta de hechos constitutivos de causa de acción, las que fueron declaradas sin lugar y entonces contestaron la demanda negando específicamente todos los hechos esenciales de la demanda y como defensas especiales alegaron la negligencia contributiva de Tomás Rodríguez, y haciéndolo responsable del accidente por haber cruzado súbitamente la calle Tapia de izquierda a derecha no pudiendo Olabarrieta evitar arrollarlo, negaron que el truck fuera propiedad de los codemandados Fortuna Mazarredo y Emilio Olabarrieta y sí de una tercera persona, Luis A. Ruiz; que al tiempo del accidente el vehículo no era conducido por Olabarrieta como empleado de su madre ni estaba en gestiones de ella, y que el accidente no fué debido a la propiedad, mantenimiento u operación del camión HP–711 por la codemandada Fortuna Mazarredo.

Pasaremos a considerar y resolver primero, el recurso interpuesto por la demandante contra aquella parte de la sentencia que desestimó la demanda en cuanto a los codemandados Fortuna Mazarredo y U. S. Fidelity & Guaranty Co. Cuatro errores atribuye a la corte inferior, a saber, al concluir que el contrato de seguro en este caso fué hecho por la compañía para asegurar personalmente a Fortuna Mazarredo; al apreciar y concluir que la compañía no tenía responsabilidad civil en virtud de la póliza; al concluir que Emilio Olabarrieta propietario del truck, no estaba cubierto por la póliza, y al absolver a la compañía de toda responsabilidad. Los cuatro envuelven, prácticamente, la misma cuestión, a saber, si la póliza expedida por la codemandada United States Fidelity & Guaranty Co. a favor de Fortuna

Mazarredo cubría o no la responsabilidad civil objeto de la reclamación de daños en este caso. Y por tanto, los resolveremos conjuntamente pues en esta forma los discute la apelante en su alegato.

■ En la opinión que sirvió de base a la sentencia el juez interino, Sr. de la Haba, al resolver este respecto del caso, se expresó así:

"Igualmente existe un conflicto de evidencia en cuanto a la propiedad del *truck*, pues mientras la demandante sostiene que era de Olabarrieta según su alegación sexta, y de Olabarrieta y la Mazarredo según la alegación cuarta, los demandados alegan que el vehículo era propiedad de Luis A. Ruiz.

"Creemos que la evidencia toda demuestra que el *truck* no era propiedad de Ruiz sino de Emilio Olabarrieta. Éste hizo el negocio del *truck* con la casa Smallwood Brothers, pagaba los plazos y proveía los gastos de operación del mismo, trabajando Ruiz solo como *chauffeur*, a un tanto por ciento de los ingresos. Por razones que desconocemos el *truck* fué puesto a nombre de Ruiz, y cuando él salió del empleo de Olabarrieta le traspasó el *truck* al empleado de Olabarrieta, Juan Faria Rosario. La declaración de Ruiz es una contra su propio interés y la corte tiene que darle entero crédito pues no es lógico suponer que si el *truck* era de su propiedad, y en el accidente no tenía responsabilidad alguna personal, que negase la propiedad del *truck* con el peligro consiguiente de perderlo.

"As como Olabarrieta adquirió el *truck* HP–711 y lo puso a nombre de un tercero, en igual forma actuó cuando lo aseguró contra accidentes con la demandada United States Fidelity & Guaranty Co. En lugar de asegurarlo a nombre de Ruiz, o a su propio nombre como asegurado, Olabarrieta lo aseguró como de la propiedad de su madre Fortuna Mazarredo, la que a todos los efectos del contrato de seguro, es la asegurada.

"No existe la más leve *señal de prueba* que conecte a Fortuna Mazarredo con la propiedad del *truck* HP–711, ni con ninguna empresa o negocio entre ella y su hijo Olabarrieta en cuanto al funcionamiento de dicho vehículo a los fines de transportación pública. En cuanto a estos extremos *ha quedado sin probar completamente la alegación cuarta* de la demanda, en lo que respecta, desde luego, a la demandada *Fortuna Mazarredo*.

"El contrato de seguro entre la demandada Mazarredo y la United States Fidelity & Guaranty Co., señala como asegurada a Fortuna

Mazarredo, con la cual conviene la compañía asegurarla, de acuerdo con los convenios contenidos en los acuerdos generales de seguro de la póliza (*Exhibit* 'D' de la demandante). Entre estos acuerdos generales se encuentra la cláusula A, que en su parte esencial dice así:

" ' 'Contra pérdida derivada de la responsabilidad que impone la ley al Asegurado por los daños y perjuicios ocasionados por lesiones personales, incluyendo la muerte resultante de esas mismas lesiones, que sufra o alegue haber sufrido accidentalmente cualquier persona o personas causado por o debido a la propiedad, mantenimiento u operación de cualquier automóvil propiedad de y bajo licencia en nombre del Asegurado descrito en las estipulaciones . . . etc.'

"Es claro y patente, que el contrato de seguro fué hecho por la compañía *para asegurar personalmente a Fortuna Mazarredo contra cualquier responsabilidad civil de ella, resultante de la propiedad, mantenimiento u operación del vehículo descrito en la póliza; y si el vehículo no era de ella, ni se probó que tuviera responsabilidad alguna por su operación o mantenimiento, es consecuencia lógica que la aseguradora no tiene tampoco responsabilidad civil por virtud del contrato de seguro.*

"El contrato de seguro cubre al vehículo sólo cuando es de la propiedad del asegurado o mantenido u operado por éste. Es una obligación personal entre la asegurada y la compañía, que responde únicamente cuando a la primera le cabe responsabilidad civil como consecuencia del funcionamiento del vehículo cubierto en la póliza. En el presente caso la prueba de la propia demandante demuestra que el dueño del *truck* era el demandado Olabarrieta, y no se demostró relación alguna entre éste y la demandada Mazarredo, fuera de que ella era la madre del primero. Si la Mazarredo no era la dueña del *truck* y no tenía relación alguna con Olabarrieta con respecto a la operación del mismo en un negocio o empresa de servicio público o transporte, es claro que la compañía aseguradora no tiene responsabilidad, porque la falta de responsabilidad civil de la asegurada trae como resultado la inexistencia de responsabilidad alguna de la aseguradora.

"Bajo la póliza expedida a la Mazarredo, el propietario del *truck* Olabarrieta no estaba cubierto, porque la aseguradora no contrató con él, ni su responsabilidad civil para con terceros afecta a la asegurada Mazarredo; por consiguiente no fué uno de los riesgos asumidos por la United States Fidelity & Guaranty Co., bajo los términos de su contrato de seguro con Fortuna Mazarredo.

"A este respecto existe abundante jurisprudencia y los trata-distas sobre la materia sostienen esta teoría uniformemente. Blash-field *Cyclopedia of Automobile Law and Practice,* Tomo 6, pág. 343, Sección 3962; *Whitney* v. *Employers' Indemnity Corp.* 202 N. W. 236, 4 A.L.R. 495; *Bess* v. *Commonwealth Casualty Co.,* 128 Atlantic Reporter 250, 101 N. J. Law 380." (Itálicas nuestras.)

Hemos leído detenidamente la transcripción de evidencia, y los hechos que la corte inferior dió por probados se ajustan correctamente a la prueba presentada por las partes. Asimismo los casos y autoridades citados en la opinión sostienen las conclusiones legales a que llegó interpretando los términos de la póliza tal como aparecen redactados.

La apelante, en su alegato, acepta expresamente la conclusión a que llegó la corte sentenciadora de que el truck era de la única y exclusiva propiedad del codemandado Emilio Olabarrieta y que lo aseguró como de la propiedad de su madre la codemandada Fortuna Mazarredo. Insiste, sin embargo, la apelante en sostener que la corte inferior debió haber dado por reformado el contrato de seguro para que, en lugar de Fortuna Mazarredo, apareciera como asegurado Emilio Olabarrieta. Cita extensamente autoridades y jurisprudencia para sostener su teoría pero, somos de opinión que la misma no puede prevalecer por varios motivos, a saber, primero, porque esta cuestión no se planteó a la corte inferior y se levanta por primera vez en apelación ante este tribunal; segundo, porque no se hizo alegación alguna en la demanda al efecto de que la codemandada United States Fidelity & Guaranty Co. tuviera conocimiento de que el truck no era propiedad de Fortuna Mazarredo, ni que la póliza se expidiera por error o fraude a nombre de dicha asegurada; tercero, porque no se presentó por la demandante evidencia alguna que tendiera a demostrar que en la expedición de la póliza se incurriera por las partes contratantes o por una de ellas en dicho error o fraude y, cuarto, porque la acción ejercitada fué una de daños y perjuicios sin que, como parte de la misma, se solicitara, si es que procedía, la reforma del contrato de seguro.

Decimos "si es que procedía" porque en esta jurisdicción no se ha resuelto expresamente la cuestión. En el caso de *Carrión* v. *Lawton,* 44 D.P.R. 463, esta Corte Suprema, por medio de su Juez Asociado Sr. Córdova Dávila, se expresó, a la página 469, así:

"Además el demandado ha presentado la defensa de cosa juzgada, que, en caso de prevalecer, *hace innecesario que resolvamos ahora si la acción de reforma de contrato, tal y como surge de las alegaciones de la demanda, puede ejercitarse o no dentro de nuestro derecho civil."* (Itálicas nuestras.)

En dicho caso prevaleció la defensa de cosa juzgada y el tribunal no tuvo que resolver la cuestión planteada. Tampoco en el caso de autos consideramos que proceda resolverla definitivamente porque, como hemos dicho antes, la demanda no contiene las alegaciones necesarias ni se presentó la evidencia indispensable para justificar que este caso se considere como uno que conlleva la determinación de si procedía o no la reforma del contrato de seguro otorgado. Que, sin llenar estos requisitos la acción no procede, aun en las jurisdicciones en que existen los procedimientos en equidad, es la regla prevaleciente.

En 23 R.C.L. 360, Sec. 57, se expone la doctrina en la forma siguiente:

"Una corte de equidad no puede reformar un documento sino de acuerdo con las alegaciones que justifican el remedio en equidad solicitado. Las alegaciones deben demostrar que el documento cuya reforma se solicita no refleja el acuerdo verdadero que medió entre las partes por razón de su mutuo error o debido al fraude de una de ellas ó al fraude o situación injusta por un lado y error por el otro. Al alegar los motivos para la reforma, se permite a veces imputar fraude o error en la alternativa. Desde luego, los términos del acuerdo verdadero, si alguno existió entre las partes, deben ser alegados específicamente, y el documento cuya reforma se solicita debe ser transcrito en las alegaciones o unido a ellas como un 'exhibit' de modo que de él y de las alegaciones en cuanto al verdadero acuerdo o en cuanto a la intención real de las partes, aparezca claramente que dicho documento no está en armonía con el acuerdo verdadero de las partes."

Y véanse además las secciones 58 y 59 en cuanto a la forma en que debe alegarse el error o el fraude. Véase al mismo efecto 53 C. J. 1012, Sec. 166.

La demanda en este caso no contiene alegación alguna de error o fraude cometido por alguna o ambas partes en el otorgamiento de la póliza de seguro. Se limitó la demandante a decir que el truck era de la propiedad de Fortuna Mazarredo y Emilio Olabarrieta y que el mismo fué asegurado por la United States Fidelity & Guaranty Co. Tampoco presentó la demandante prueba alguna que fuera admitida por la corte sin la oposición de los demandados, que pudiera dar lugar a considerar enmendada la demanda, al efecto de ajustar las alegaciones a la prueba practicada. Para poder obtener que una corte modifique un contrato, bajo la doctrina de "reformation", debe la parte que así lo solicita demostrar, mediante evidencia adecuada, que el contrato no es un reflejo fiel de la voluntad de las partes debido a un error o fraude. Véase 6 Blashfield *Cyclopedia of Automobile Law and Practice,* 308, Sec. 3901.

Es cierto que el peso de las autoridades en los Estados Unidos sostiene la doctrina de que no es necesario ejercitar previamente el remedio en equidad sobre reforma o enmienda del contrato y que puede solicitarse en la misma acción en ley sobre cumplimiento del contrato de seguro, pero siempre se requiere que las alegaciones y la evidencia así lo justifiquen. En 29 American Jurisprudence 236, parte de la Sec. 240, se expresa la regla así:

"El peso de las autoridades sostiene que *cuando las alegaciones y la evidencia* en una acción sobre una póliza de seguro son tales que justificarían a la corte en reformar la póliza, la corte puede darle efecto al verdadero contrato y enforzar la póliza como si estuviera reformada, sin tener que hacer un decreto formal de reforma." (Itálicas nuestras.)

Véanse los casos citados en la monografía contenida en 66 A.L.R. 763 y especialmente a las páginas 772 y siguientes.

De manera, que siempre deben alegarse hechos y luego

probarse los mismos para que una corte esté justificada en enmendar los términos del contrato. No habiéndose hecho esto por la demandante en este caso, consideramos que no estamos obligados a resolver definitivamente, como dijimos antes, si dicha acción puede ejercitarse.

Bajo los hechos alegados y probados y las autoridades y jurisprudencia citadas en la opinión, supra, no cometió error la corte inferior al resolver que el codemandado Emilio Olabarrieta no estaba cubierto por la póliza y absolver a la compañía aseguradora de responsabilidad.

■ Pasamos a considerar ahora el recurso interpuesto por Emilio Olabarrieta contra la sentencia que lo condenó a pagar $3,000, costas y $350 de honorarios de abogado. Señala cuatro errores, por haber la corte inferior declarado sin lugar la moción sobre especificaciones y *bill* de particulares, al declarar sin lugar una moción eliminatoria, al declarar con lugar la demanda no obstante la ausencia absoluta de prueba que acredite que la demandante Felipa Rivera sea la única y universal heredera del finado Tomás Rodríguez Rivera y, por último, al apreciar la prueba presentada y estimar probado que el accidente ocurrió debido a la negligencia o impericia del codemandado Emilio Olabarrieta.

Para resolver el último error señalado basta con leer los fundamentos que expresó la corte inferior en su opinión, en cuanto a cómo consideró probados los hechos que dieron lugar al accidente. Después de analizar las declaraciones de los seis testigos de la demandante y del único testigo de los demandados, se expresó así:

"Tanto el testigo de los demandados como los testigos Tomás Rodríguez y Adolfo Betancourt, declararon que el *truck* del demandado Olabarrieta estaba parado en la calle Muñoz Rivera frente al puesto de leche, y que para entrar a la calle Tapia, con el fin de bajar hacia Loíza, tuvo que dar contra-marcha y virar en la intersección de dichas calles. Desde la esquina de Muñoz Rivera hasta el sitio del suceso, sólo habían cuatro casas y el recorrido no era muy largo según manifestó el testigo Rivera Falú que lo calculó en unos ochenta pies.

"Tanto la testigo Georgina Vélez como el testigo Adolfo Betancourt declararon categóricamente que Tomás Rodríguez bajaba por la calle Tapia hacia Loíza por la derecha de dicha calle. Lo sabe Georgina Vélez porque momentos antes se había adelantado con la sobrinita del interfecto, y con su propia hermana, andando hacia adelante y dejando a Rodríguez detrás como una o dos casas de largo. El testigo Betancourt es categórico en su afirmación de que pudo observar la desviación súbita ·del *truck* hacia la derecha y el golpe que le dió a Rodríguez con la parte derecha de la caja, cayendo Rodríguez a mano derecha en dirección a la calle de Loíza.

La testigo Marta Ortiz sintió un golpe y el chirrido de las ruedas. También sintió este golpe el testigo Rivera Falú, y la testigo Georgina Vélez describe el ruido como cuando un carro trata de virar una esquina. Los testigos de la demandante, Marta Ortiz, Rivera Falú y Adolfo Betancourt hablan del hoyo que había cerca de la esquina, y el Jefe Silén declaró que el *truck* quedó parado como a cinco o diez metros del hoyo. Los tres testigos que presenciaron el accidente, Georgina Vélez, Adolfo Betancourt y Pedro Ocasio describen la súbita desviación del *truck* hacia la derecha antes de arrollar a Tomás Rodríguez. Leoncio Rivera Falú habla de un hoyo a la parte de arriba de su casa, del cual los carros huían, y de una zanja que atravesaba la calle Tapia y que estaba situada al frente de la primera casa que da esquina a Muñoz Rivera.

La corte tiene que dar gran peso al testimonio de Georgina Vélez por la forma ingenua y cándida en que declaró, tanto a preguntas del abogado de la demandante, como durante el extenso y hábil interrogatorio del abogado de los demandados. Este testimonio unido a la declaración del testigo presencial Adolfo Betancourt y del testimonio de los testigos Rivera Falú, Marta Ortiz y de la descripción gráfica dada por el Jefe Silén, lleva a esta corte a la conclusión de que el accidente que ocasionó la muerte de Rodríguez fué debido a la negligencia del demandado Olabarrieta en el manejo del *truck* HP–711 y que éste, después de haber pasado la primera zanja que atraviesa la calle Tapia, más o menos frente a la primer casa que da esquina a la calle Muñoz Rivera, desvió su *truck* en tal forma violenta y negligente hacia la derecha, que arrolló al interfecto Tomás Rodríguez que andaba por su mano derecha, en dirección a la calle de Loíza, y de espaldas al referido *truck* que caminaba en la misma dirección.

"Corrobora esta conclusión de la corte el hecho de que todas las contusiones y heridas del interfecto fueron en la región izquierda

de su cabeza y hombro izquierdo, lo que da a entender que fué alcanzado por el *truck* con la parte derecha de dicho vehículo y no como dice el testigo Ocasio que fué alcanzado con el *bumper* por la espalda, y lanzado hacia el frente. El examen *post mortem* del cadáver de Rodríguez, llevado a efecto por el Dr. Martínez Alvarez, no reveló ninguna contusión o golpe por la espalda a la altura de las piernas o de la cintura del interfecto, cosa que seguramente se hubiese revelado si Rodríguez hubiese sido alcanzado por el *truck* y hubiese recibido un fuerte golpe por la parte trasera de su cuerpo. Por otro lado, si el interfecto hubiese estado en el acto de cruzar la calle hacia la derecha, en el momento de ser alcanzado por el *truck* del demandado Olabarrieta, las contusiones y golpes los hubiese recibido en el lado derecho de su cuerpo y alguna señal habría observado el Dr. Martínez Alvarez reveladora de esa posición del interfecto en el momento de ser arrollado. El examen pericial *post mortem* reveló que el interfecto era un hombre normal, de estructura muscular uniforme, y sano. El golpe o golpes que le produjeron la muerte han tenido por necesidad que ser golpes contundentes y fuertes para producir la fractura del cráneo y las intensas hemorragias que observó el médico.''

No se imputa a la corte inferior pasión, prejuicio o parcialidad en la apreciación de la prueba sino que incurrió en manifiesto error al apreciar la misma. Somos de opinión, después de haber leído detenidamente la transcripción de evidencia, que la corte *a quo* apreció correctamente los hechos del caso y que la conclusión a que llegó de que el codemandado Emilio Olabarrieta fué negligente al manejar el truck debe ser sostenida. La teoría del demandado, según su único testigo Ocasio, de que el accidente se debió a la negligencia de Tomás Rodríguez al cruzar la calle Tapia de izquierda a derecha en el momento en que Emilio Olabarrieta bajaba por el lado derecho de dicha calle, quedó destruída primero, por las heridas y contusiones que presentaba el interfecto todas en el lado izquierdo de su cuerpo y ninguna en la espalda o lado derecho y segundo, por la preponderancia de la evidencia de la demandante cuyos testigos todos declararon que Tomás Rodríguez caminaba por el lado derecho de la

calle y que en ningún momento lo vieron cruzar del lado izquierdo al derecho. Debe desestimarse este error.

■ Los dos primeros señalamientos que se refieren al hecho de haberse declarado sin lugar la moción sobre especificaciones y particulares y la moción eliminatoria, carecen de importancia substancial y aun cuando resolviéramos que se habían cometido, no conllevarían la revocación de la sentencia. El tercer error imputado sí es substancial y se refiere al hecho de no haberse probado por la demandante que ella sea la única y universal heredera del finado Tomás Rodríguez Rivera.

■ La acción ejercitada en este caso por Felipa Rivera como madre legítima y única heredera de Tomás Rodríguez, está autorizada por el artículo 61 del Código de Enjuiciamiento Civil, por haberse probado que Tomás Rodríguez tenía cuarenta años de edad al fallecer, pero ya se ha resuelto por este tribunal en los casos de *Carbou Rodríguez* v. *Mir*, 36 D.P.R. 809; *López* v. *Am. R. R. Co.*, 50 D.P.R. 1, y *Méndez* v. *Serracante*, 53 D.P.R. 849, que la prueba debe demostrar, no solamente que el demandante es heredero de la persona por cuya muerte se reclaman los daños y perjuicios, sino también debe probarse que el demandante es el único heredero con derecho a reclamarlos.

Por el examen cuidadoso que hemos hecho de la evidencia presentada por la demandante somos de opinión que no se probó que ella sea la única heredera de su hijo Tomás Rodríguez Rivera. Del acta de nacimiento de dicho Tomás Rodríguez (exhibit B de la demandante) aparece que él era hijo legítimo de Tomás Rodríguez Rodríguez y de Felipa Rivera Colón, pero en ningún momento declaró la demandante que su esposo hubiera fallecido ni se presentó el acta de defunción de dicho Tomás Rodríguez Rodríguez. Tampoco se probó si el hijo de la demandante Tomás Rodríguez Rivera al fallecer había otorgado testamento o no. El hecho de que la demandante sea su madre y que él falleció soltero y sin dejar hijos, no la hace su única y universal heredera, pues

era necesario probar antes que Tomás Rodríguez Rivera murió sin haber otorgado testamento.

Por los fundamentos expuestos, *se desestima el recurso de apelación interpuesto por la demandante y, habiéndose cometido el tercer error señalado en el recurso del codemandado Emilio Olabarrieta y siguiendo la pauta trazada en los casos de Carbou Rodríguez v. Mir y Méndez v. Serrano, supra, nos vemos precisados a revocar la sentencia apelada y devolver el caso a la corte inferior con el único objeto de que se determine si la demandante es o no la única heredera de Tomás Rodríguez Rivera, debiendo la corte inferior dictar nueva sentencia de acuerdo con el resultado de la prueba que se le presente con tal fin.*