RAFAEL DE J. CORDERO, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, ETC., demandante y apelado, *v.* AMERICAN RAILROAD CO. OF PORTO RICO, demandada y apelante. EL MISMO, demandante y apelado *v.* LA MISMA, demandada y apelante. EAGLE INDEMNITY COMPANY, demandante y apelada, *v.* LA MISMA, demandada y apelante.

Núms. 9263, 9262 y 9261.—*Sometidos:* Abril 2, 1946. *Resueltos:* Julio 24, 1946.

462

*Mariano Acosta Velarde, Daniel Pellón la Fuente* y *Donald R. Dexter,* abogados de la apelante; *R. Rivera Zayas* y *G. Rivera Cestero,* abogados de la apelada en el caso núm. 9261; *Ángel de Jesús Matos* y *A. Sandín del Manzano,* abogados del Administrador del Fondo del Seguro del Estado, apelado éste en los casos 9262 y 9263.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Agustín Guadalupe Pérez era el chófer y Manuel Comas el pasajero de un automóvil que chocó con un tren de la demandada en un paso a nivel, ocasionando como resultado la muerte de Guadalupe y lesiones a Comas. Por haber sido muerto Guadalupe en el curso de su empleo, el Administrador del Fondo del Seguro del Estado, de conformidad con el artículo 3, inciso 5, de la Ley núm. 45, Leyes de Puerto Rico, 1935 ((1) pág. 251), pagó a los padres e hijos naturales de éste la suma de $1,882.40 como compensación del trabajo.

De conformidad con el artículo 31 de la Ley si una tercera persona es responsable de un accidente en virtud del cual el Fondo del Estado venga obligado a compensar al obrero o a sus beneficiarios, el Administrador del Fondo queda subrogado en los derechos del obrero o de sus beneficiarios contra el tercero y podrá entablar acción contra dicho tercero a nombre del obrero o de sus beneficiarios. Si en dicho pleito el Administrador obtiene de la tercera persona una suma mayor que la que le fué pagada al obrero o a sus beneficiarios en calidad de compensación, dicho exceso será pagado a estos últimos.

El Administrador radicó uno de los tres casos aquí envueltos contra la demandada "a nombre y en subrogación de los derechos de" los hijos naturales y padres de Guadalupe, alegando que éste había sido muerto como consecuencia de la negligencia de la demandada. Después de un juicio en los méritos, la corte inferior dictó sentencia contra la demandada por la suma de $2,907.60, ordenando que se reintegrasen al Fondo $1,882.40 y se pagase a los hijos naturales y a los padres del occiso el remanente.

Al apelar contra esta sentencia, la demandada alega que ésta debe ser revocada toda vez que no se demostró que los beneficiarios por quien se subrogó el Administrador eran los únicos herederos del finado. La demandada se apoya en nuestros casos que resuelven que en una acción por muerte ilegal los demandantes deben probar que son los únicos herederos del finado. *Rivera* v. *Olabarrieta*, 58 D.P.R. 432, 448; *Méndez* v. *Serracante*, 53 D.P.R. 849, 852, 855–56; *Carbou* v. *Mir*, 36 D.P.R. 809; artículo 61, Código de Enjuiciamiento Civil.

Alega el Administrador que estos casos y el artículo 61 no son de aplicación, por el fundamento de que el artículo 31 de la Ley núm. 45 creó una acción contra la tercera persona cuya negligencia cause la muerte de un obrero en el curso de su empleo, a favor de los beneficiarios del obrero

fallecido, según define a éstos el inciso 5 del artículo 3, y por tanto derogó la acción civil ordinaria que de otro modo podía radicarse bajo el artículo 61 del Código de Enjuiciamiento Civil por los herederos del interfecto contra tal tercera persona.

Si el obrero es muerto en el curso de su empleo, la compensación que reciben sus beneficiarios bajo la Ley núm. 45 constituye su remedio exclusivo contra un patrono asegurado. Artículo 20 de la Ley núm. 45; *Onna* v. *The Texas Co., Inc.*, 64 D.P.R. 520; *De Jesús* v. *Osorio*, 65 D.P.R. 640. Pero el artículo 20 no es aplicable a la reclamación contra tercera persona si el obrero fué muerto debido a la negligencia de dicha tercera persona. Como se indicó en los casos de *Olabarrieta, Serracante* y *Mir,* la responsabilidad de dicho tercero por la muerte siempre ha existido a favor de los herederos del finado, independientemente de la Ley núm. 45. El artículo 31 de la Ley núm. 45 no tiene por miras derogar esta causa de acción. Tampoco sustituye dicha acción por una a favor de los beneficiarios bajo el inciso 5 del arículo 3. El artículo 31 más bien dispone sencillamente que si un beneficiario tiene tal acción, el Administrador queda subrogado en ella. En esta forma se han interpretado estatutos similares al nuestro. *Reidy* v. *Old Colony Gas Co.,* 53 N.E.2d 707 (Mass., 1944); *Doleman* v. *Levine,* 295 U.S. 221; *Joel* v. *Peter Dale Garage,* 206 Minn. 580 (1940); *Matter of Babb* v. *Conboy & Brown Constr. Co.,* 264 N.Y. 357, 362 (1934). *Cf. Uva* v. *Alonzy,* 163 A. 612 (Conn., 1933).[1] Además, si adoptáramos la interpretación del artículo 31 sugerida por el Administrador, tendríamos que decir que la Legislatura tuvo la intención de derogar la acción ordina-

[1] El único caso citado por el Administrador, *Harris* v. *Louisville & N.R. Co.,* 186 So. 771 (Ala., 1939), es distinguible. Allí el estatuto disponía que el obrero podía a su opción radicar una acción ordinaria contra la tercera persona, o aceptar la compensación de obrero, pero no ambas. Habiendo elegido aceptar la compensación de obrero, no podía luego demandar al tercero, quien respondía solamente al asegurador por subrogación.

ria por muerte ilegal, perteneciente a aquellos herederos que no recibieron compensación alguna bajo la Ley núm. 45, por no estar dependiendo del obrero para su sostenimiento. No creemos que ésta fué la intención de la Legislatura. Horovitz *on Workmen's Compensation,* pág. 335.

No hay problema si los beneficiarios bajo la Ley núm. 45 y los herederos son idénticos. En dicho caso en virtud del artículo 31 el Administrador puede demandar por los daños a que tendrían derecho los beneficiarios en su carácter de herederos, retener como reintegro la suma pagádales como beneficiarios, y entregarles el remanente. La dificultad surge si los herederos y los beneficiarios son diferentes o si los herederos no eran dependientes del obrero para su sostenimiento.

Toda vez que el Administrador ocupa el mismo sitio de los beneficiarios en tanto en cuanto éstos tienen una reclamación como herederos, al demandar a un tercero por la muerte ilegal, el Administrador viene obligado, de acuerdo con los casos aquí citados, a alegar y probar que los herederos en cuyos derechos se subrogó son los únicos herederos del obrero. Debido a que el Administrador no alegó ni probó en este caso que los beneficiarios eran los únicos herederos, debe revocarse la sentencia y devolverse el caso con el único fin de determinar (a) si los beneficiarios son herederos del causante, y (b) si existen algunas personas, que no son beneficiarios bajo la Ley núm. 45, que también sean herederos. Este es de acuerdo con la forma en que devolvimos los casos de *Mir* y de *Olabarrieta.* Si (a) y (b) son contestadas en la afirmativa, el Administrador tendrá derecho a recibir, con el fin de acreditarlas a las sumas que les pagó a los beneficiarios, solamente aquellas cantidades a que tendrían derecho los beneficiarios como partes proporcionales en calidad de herederos.

Conocemos los casos de Estados Unidos que resuelven que cuando existen algunos herederos que no son beneficia-

rios, la acción por la muerte ilegal no puede instituirla el asegurador subrogado, sino que dichos daños deben reclamarse solamente mediante acción iniciada por el representante personal del finado. *Reidy* v. *Old Colony Gas Co.*, supra. Horovitz, supra, pág. 346, afirma que estos casos representan el peso de las autoridades. Pero dichos casos descansan por lo menos en parte en el concepto del derecho común de un administrador o albacea que tiene amplios poderes sobre la herencia hasta que ésta se distribuye. De acuerdo con nuestro derecho, la administración toma poco tiempo, tiene poco alcance, y los propios herederos dominan la herencia. *Pérez* v. *Sucrs. de M. Pérez & Co.*, 41 D.P.R. 852. Toda vez que nuestra ley no prohibe la acción por los herederos propiamente dichos, no vemos razón alguna por qué el administrador no pueda instituir dicha acción, siempre y cuando tenga la obligación de acumular los otros herederos, si los beneficiarios, en cuyos derechos se subrogó, no son los únicos herederos. Reconocemos la contundencia del argumento de que no debe fraccionarse la causa de acción. *Doleman* v. *Levine*, supra, pág. 226; pero la conclusión a que llegamos no requiere nada más que un pleito. Si los beneficiarios no son los herederos del finado, no tienen derecho alguno, en los cuales pueda subrogarse al Administrador, bajo el artículo 31. Sin embargo, si los beneficiarios y otros son los herederos, el Administrador, habiéndose subrogado en los derechos de los beneficiarios bajo el artículo 31, debe permitírsele unirse a los otros herederos en un pleito en el que pueda recobrar la parte proporcional de los beneficiarios como herederos, de la cual retiene la compensación que ya les había pagado, en su carácter de beneficiarios, antes de que les entregue el remanente. Como ya se ha indicado, al devolverse el caso a la corte inferior, ésta debe sostener su sentencia si los beneficiarios son los únicos herederos, revocarla si los beneficiarios no son herederos, y modificarla si todos o algunos de los beneficiarios son herederos junto a

otras personas, después que éstas hayan sido incluídas como partes necesarias en la acción.

Manuel Comas, el pasajero del automóvil, resultó lesionado en el curso de su empleo. El Administrador le pagó $1,241.26 como compensación del trabajo, y demandó a la compañía en el segundo de los tres casos aquí envueltos, en subrogación de los derechos de Comas. La corte de distrito dictó sentencia por $2,750, ordenando que se reintegraran al Fondo del Estado $1,241.26, y se le entregara a Comas el sobrante. La demandada apeló esta sentencia. Ya que no hay duda de que el Administrador tiene derecho a instituir esta acción a tenor de lo dispuesto en el artículo 31 de la Ley núm. 45, pasemos a los méritos de la apelación.

Este accidente ocurrió en un paso a nivel formado por los raíles de la demandada y un camino. El maquinista manejaba la locomotora hacia atrás y la corte inferior resolvió que no tocó pito o campana. La mayoría de los errores señalados por la demandada se refieren a la apreciación de la prueba por la corte de distrito. Alega que la corte de distrito cometió error al resolver que (1) Comas no podía ver la locomotora; (2) la visibilidad de un maquinista de locomotora que va hacia atrás es inferior a la de un maquinista cuya locomotora camina hacia adelante; (3) la locomotora chocó con el automóvil; (4) el accidente no ocurrió mientras la locomotora estaba en el medio del paso a nivel, sino en el instante en que ésta salió al paso a nivel; (5) que cierta prueba pericial de la demandada era puramente especulativa; (6) que el maquinista manejaba la locomotora de espaldas al sitio por donde iba a pasar; y (7) que el automóvil corría a poca velocidad porque solamente dejó huella en la carretera de 5.75 metros.

Creemos innecesario examinar cada una de estas conclusiones, por sí sola, para determinar si la corte inferior cometió error al dictar sentencia a favor del demandante. La evidencia oscila en peso en cuanto a cada una de ellas. Basta

decir que hay alguna evidencia suficiente para justificar la conclusión de la corte inferior en cada cuestión. Además, aún si concluyéramos que la corte inferior cometió error en una o más de estas conclusiones, no podemos decir que la comisión de cualquiera de estos supuestos errores justificaría la revocación de esta sentencia. Estamos convencidos que dicha sentencia está sostenida por la evidencia al considerarse ésta en conjunto.

▇ La demandada también se queja de la actuación de la corte inferior al admitir sobre su oposición, evidencia de que un guardabarrera—cuyo jornal se pagaba de por mitad por la demandada y por el patrono de Guadalupe y Comas, que explotaba una central azucarera por allí cerca—estaba anteriormente estacionado en este paso a nivel, pero había sido retirado un año antes del accidente. Arguye la demandada que Comas no podía confiar en la señal del guardabarrera, ya que manifestó que tenía conocimiento de que éste había sido retirado hacía un año. Pero esta prueba era admisible, no con referencia a cualquier obligación estatutaria y no obstante el conocimiento que Comas tenía de que se había descontinuado la práctica, sino para demostrar que la demandada reconoció en el pasado voluntariamente que el estacionar un guardabarrera en este paso a nivel era una precaución saludable. Véanse *López* v. *American R. R. Co.,* 50 D.P.R. 1, 15–16; *cf. Just* v. *Moreno,* 63 D.P.R. 673.

▇ La demandada señala como error la actuación de la corte inferior, al declarar sin lugar su objeción a la declaración del maquinista en su contrainterrogatorio, al efecto de que durante ese mismo año había tenido otro accidente en el mismo paso a nivel. Bajo las circunstancias de este caso no encontramos que sea errónea la actuación de la corte inferior. Véanse *Blanco* v. *Municipio de Mayagüez,* 57 D.P.R. 482; *Pueblo* v. *Cabrera,* 59 D.P.R. 135; *Casanovas* v. *The Ponce Electric,* 38 D.P.R. 126.

En una conferencia anterior al juicio las partes estipularon que el camino Ma. Belén era un camino municipal. La corte de distrito resolvió que es un camino insular "aunque no es una carretera insular declarada", citando la Ley núm. 143, Leyes de Puerto Rico, 1937, pág. 356. Alega la demandada que dicho camino no es una carretera insular, en vista de la estipulación y de la certificación del Departamento admitida en evidencia al efecto de que dicho camino no está en conservación por el Departamento. También alega la demandada que de cualquier modo la sección 6 de la Ley núm. 80, Leyes de Puerto Rico, 1936, expresamente exime los caminos municipales conservados por el Departamento de los efectos del inciso $q$ de la sección 3 de la Ley núm. 70, Leyes de Puerto Rico, 1917, Tomo II, que exige a la compañía de ferrocarril "conservar cadenas, portones u otros aparatos adecuados de protección, en todos los cruces a nivel de las carreteras públicas insulares . . . ".

De ser éste un paso a nivel sujeto al inciso $q$, el no mantener allí un aparato de protección constituye negligencia *per se. Línea Borinquen, Inc.* v. *American Railroad Co.*, 53 D.P.R. 309. Sin embargo, en su corta exposición sobre este punto, la corte de distrito no indicó claramente si creía o no que la demandada tenía la obligación de conservar en este cruce específico los aparatos de protección contemplados por el inciso $q$. Pero, supondremos, sin decidirlo, que la carretera era una en donde la demandada no tenía la obligación de tomar estas medidas. Sin embargo, no podemos ver de qué manera esto pueda afectar este caso en el que la controversia sustancial envolvía la cuestión de negligencia al acercarse al paso a nivel y consecuentemente la cuestión de los aparatos de protección desempeñó un papel sin importancia en la decisión del caso.

Creemos innecesario discutir los restantes errores señalados por la demandada, excepto para decir que nada encontramos en ellos que justifique la revocación de las sentencias.

El tercer caso aquí envuelto era una sentencia a favor de la Eagle Indemnity Company que pagó $930 al patrono como dueño del automóvil por los daños ocasionados a éste en el accidente. La compañía aseguradora radicó pleito contra la demandada en virtud de la póliza que la subrogaba en los derechos del dueño del automóvil. Nuestras conclusiones en el segundo caso son de igual manera aplicables a éste.

*La sentencia en el primer caso será revocada y se devolverá el caso para ulteriores procedimientos de conformidad con esta opinión. Las sentencias en el segundo y tercer casos serán confirmadas.*