**KELLEY v. UNITED STATES.**

No. 2540.

Circuit Court of Appeals, First Circuit.

May 16, 1931.

Leo M. Harlow, of Boston, Mass. (Frederick Kavolsky, of Fall River, Mass., on the brief), for appellant.

John Laurence Hurley, Sp. Asst. U. S. Atty., and Frederick H. Tarr, U. S. Atty., both of Boston, Mass. (William Wolff Smith, Gen. Counsel, and Bayless L. Guffy, Atty. Bureau of Internal Revenue, both of Washington, D. C. and B. B. Mulligan, Regional Atty., United States Veterans' Bureau, of Providence, R. I., on the brief), for the United States.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an action to recover on a contract of war-risk insurance for total disability. There is no dispute that the plaintiff was in the Navy from May 31, 1918, to October 1, 1919, when he was honorably discharged; and that he took out war-risk insurance, which was in force up to December 31, 1919, when the policy lapsed for failure to pay the premium.

At the close of the plaintiff's evidence, the court directed a verdict for the defendant on the ground that the evidence was insufficient to warrant the jury in finding a verdict for the plaintiff, and the plaintiff excepted. There are five assignments of error, all of which are based on the action of the court in directing the verdict.

The evidence tended to show that, after Kelley's discharge and before December 31, 1919, as well as after, he was mentally impaired. On June 20, 1921, he met with a motorcycle accident, suffering a compound fracture of the fibula and extensive lacerations of the left lower leg, and went to the Union Hospital at Fall River, where he was ugly and immodest toward the nurses. He was discharged from that hospital August 19, 1921. On December 25, 1922, Dr. Buck, under whose care he was while in the Union Hospital, wrote a letter stating he believed that the actions of Kelley, while in the hospital, "were early manifestations of a disordered mind."

On January 23, 1922, Kelley was sent, by the Second district court of Bristol county, to the Taunton State Hospital, from which he was finally discharged September 30, 1925, but during that time was out of the hospital once for about a year on trial and again for six months or more, having made his escape from the hospital. While there his trouble was diagnosed as "dementia præcox, insane and incompetent," and Dr. Chambers, the superintendent, testified that a person with that disease is not likely to recover, but may have periods of remission during which he can work, such periods varying according to the individual case; that "some, after a period of hospitalization, may remain out of an institution the rest of their lives just getting by."

Before he went into the Navy, Kelley worked at weaving, and, after being discharged from the Navy, worked for a while in 1920 in the Chace Mill as a weaver, and also for five months in 1921 in the Granite Mill with his father, during which time the father testified he did his son's work, neglecting his own, until he was taken ill, and that two days later his son was discharged. There was no evidence disclosing why the plaintiff did no more work other than as above stated. In this respect the case differs from Ford v. United States (C. C. A.) 44 F.(2d) 754; United States v. Godfrey (C. C. A.) 47 F. (2d) 126; and United States v. Sligh (C. C. A.) 31 F.(2d) 735, 736. In those cases there was direct evidence that the insured did not work more than he did because he could not; and it was held that the fact that the

plaintiff did some work was not controlling. In the Sligh Case the court said: "The term 'total and permanent disability' obviously does not mean that there must be proof of absolute incapacity to do any work at all. It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation."

That Kelley was under a total permanent disability when he was sent to the Taunton State Hospital on January 23, 1922, does not seem to be disputed, and the question is: Could the jury find from the evidence that before December 31, 1919, at which date the policy expired for nonpayment of the premium, "he could not follow continuously any substantially gainful occupation."

In its brief the government suggests that the motorcycle accident may have caused Kelley's insanity, but the jury, if it believed the plaintiff's witnesses, could properly have found that his actions before December 31, 1919, evidenced the beginnings of the dementia præcox and were the result of mental impairment rather than of ugliness or natural idiosyncracies.

As the jury could have found mental impairment before December 31, 1919, they also could have found, if they believed the testimony of the father and the other witnesses, that, because of such mental impairment, after October 1 and before December 31, 1919, Kelley talked queer, often rushed to the window shouting "submarine, submarine," burnt up his father's caps in the kitchen range to get up steam, was not sociable with the rest of the family, was neglectful about his appearance or keeping clean, would go off by himself, went down town and hired men to work for him, went to the post office and stole blotters, and once into the attic and hid in a dark corner; that in some of his talks on different subjects there would be no sense; that he would jump on and off cars; that he would walk into a barber shop and would be "raving about stocks and bonds"; that boys in the neighborhood shunned him; that you could not interest him in conversation; and that he talked foolishly. If the jury believed this evidence, they could reasonably conclude that no one would employ him continuously; that he could not successfully do any work for himself; and that, in view of the later history of his case, this condition was permanent.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for a new trial.