**UNITED STATES v. CANNON.**

No. 3623.

Circuit Court of Appeals, First Circuit.

Jan. 10, 1941.

Thomas E. Walsh, of Washington, D. C. (Edmund J. Brandon and William J. Hession, both of Boston, Mass., and Julius C. Martin and Wilbur C. Pickett, both of Washington, D. C., on the brief), for appellant.

John M. Boyle, of Boston, Mass., for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges and PETERS, District Judge.

MAGRUDER, Circuit Judge.

The Government appeals from a judgment in favor of the legal guardian of James P. Cannon, allowing a recovery of disability benefits under a contract of war risk insurance. "Total permanent disability" and death were the contingencies insured against. There is no doubt that at some time prior to the trial Cannon had become totally and permanently disabled. It was necessary for the plaintiff to show that such total permanent disability occurred prior to June 1, 1919, because on that date the policy lapsed for nonpayment of premiums. Pursuant to authority contained in Section 13 of the War Risk Insurance Act, 40 Stat. 399, the director of the Bureau of War Risk Insurance ruled (T.D. 20 W.R.), "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability. Total disability shall be deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it." See Lumbra v. United States, 290 U.S. 551, 558–560, 54 S.Ct. 272, 78 L.Ed. 492.

Two questions were submitted to the jury: (1) Was James P. Cannon permanently and totally disabled on or prior to May 31, 1919, to which the jury answered yes; (2) Upon what date did he first become totally and permanently disabled, to which the jury answered July 23, 1918. The jury also returned a general verdict in favor of the plaintiff, damages to be assessed by the court in accordance with the statute. Judgment was entered accordingly.

It is charged that the trial judge erred in not directing a verdict for the defendant, as moved, on the ground that there was no substantial evidence that Cannon was permanently and totally disabled at any time when the contract of insurance was in force. Though the plaintiff's case was perhaps weak, we are not persuaded that the trial judge committed error in leaving the case to the jury.

Cannon to all appearances was a normal, healthy man when he enlisted into the service. He was sent to France in October, 1917, and was six months at the front under constant shell-fire. On July 22, 1918, he suffered a severe concussion and was rendered unconscious by the explosion of a shell that killed two nearby men. He was transferred from the field hospital to the base hospital with a diagnosis "Psychoneurosis—war neurosis". During his convalescence, according to Cannon's testimony, he suffered from pains in the head and began to hear voices. In October, 1918, shortly after being returned to his unit, he received a gunshot wound and again was sent to the base hospital. Cannon did not return to active duty until December, 1918, but that was after the armistice, and the activities were mostly on the recreational side. He was discharged from the service in April, 1919. His certificate of honorable discharge contained no reference to any mental disability at that time, but this is perhaps of little significance as the same certificate contained the notation, "Wounds received in service: none."

There was some evidence tending to show that upon his return to private life Cannon exhibited an altered and unstable personality; was highly nervous, a victim of insomnia, unable to concentrate, unable to carry on sustained work.

Beginning in November, 1919, he did have a job for several months as a drill press operator. There is some conflict as to the duration of this employment. Cannon testified that it was much interrupted and that due to his condition he could not "stick it out". In United States v. Spaulding, 293 U.S. 498, at page 505, 55 S.Ct. 273, 276, 79 L.Ed. 617, which is much relied on by the Government, the court recognized: "The fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life. It may not be assumed that occasional work for short periods by one generally disabled because of impairment of mind or body does as a matter of law negative total permanent disability." To the same effect, see United States v. Lawson, 9 Cir., 50 F.2d 646; Kelley v. United States, 1 Cir., 49 F.2d 897; United States v. Meserve, 9 Cir., 44 F.2d 549.

From February, 1921, through to the middle of 1925, Cannon took courses of vocational training in electricity in various schools under the supervision of the Veterans' Bureau. He was pronounced rehabilitated as a journeyman electrician and received his license. There is some conflict as to the effectiveness of this training. Cannon testified that he never worked as an electrician after the training period; that he could not do the work.

There were introduced as exhibits various detailed reports of examinations by physicians of the Veterans' Bureau from time to time. An examination on December 9, 1920, contained the diagnosis "Neurasthenia". A similar diagnosis was made a year later. An examination on December 31, 1924, contained the diagnosis "Hysteria in an inadequate and unstable personality", prognosis "Guarded". Disability was rated as 10 per cent. On September 9, 1925, the diagnosis was "Neurasthenia, hysteroid type", with a "vocational handicap minor in degree". Cannon was again examined on February 5, 1926, this time with a diagnosis "Dementia praecox. Man shows evidence of a definite psychosis, schizophrenic in character". Dementia praecox was the prevailing diagnosis in several subsequent examinations. However, later in 1926 an examination at the Boston Psychopathic Hospital reported the diagnosis "Psychoneurosis—hysteria". An examination December 13, 1927, at the United States Veterans' Hospital, West Roxbury, Massachusetts, contained the diagnosis "Psychosis undiagnosed", prognosis "Guarded—may recover"; and further contained the notation that Cannon was incompetent and "totally incapacitated", and that such incompetence began "years ago". It was recommended that Cannon's "present rating of permanent total be continued".

On August 19, 1926, a decree of the Probate Court of Suffolk County, Massachusetts, adjudged Cannon to be insane, and appointed the plaintiff, his wife, as guardian.

Dr. Arthur Berk, a specialist in neurology and psychiatry, was called as an expert

witness by the plaintiff. Dr. Berk testified that he made an examination of Cannon on February 12, 1940, shortly before the trial, and diagnosed the case as "dementia praecox". On the basis of his own examination, and of the history of the case as disclosed by the medical records introduced as exhibits, Dr. Berk was asked by counsel for the plaintiff to give his opinion as to the extent to which Cannon was disabled in May, 1919. He answered "totally". He said that that disability prevented Cannon from working; that the disability started shortly after the explosion in which Cannon suffered a concussion and continued up to the present time, and would continue "for the rest of his life".

There was other evidence, which we do not set forth, warranting a verdict for the defendant. However, taking a view of the evidence most favorable to the plaintiff, we cannot rule as a matter of law that the trial judge erred in concluding that the plaintiff had made out a case for the jury. See Kelley v. United States, 1 Cir., 49 F.2d 897.

 The Government further objects that the testimony of Dr. Berk, above summarized, was incompetent. A qualified physician, on the basis of his own examination of the patient, disclosing a present mental or physical disability, and on the basis of the exhibits properly in evidence, consisting of the detailed medical and psychiatric history set forth in the official records of the War Department and of the Veterans' Bureau, is competent to give an expert opinion as to the cause of the present disability, its past period of development, its probable duration for the future, and its effect, at various stages, upon the patient's capacity to work. The weight to be given such testimony depends on the circumstances and is for the jury to decide. The basis of the Government's objection, as stated at the trial, was that an expert should not be permitted to base an opinion upon the opinion of other experts. While such a rule of evidence has sometimes been stated (Corrigan v. United States, 9 Cir., 82 F.2d 106), it is of questionable soundness (see Wigmore on Evidence, 3d Ed., § 682 (d)) and in any event we think it has no application to the case at bar.

The Government contends that Dr. Berk's testimony was additionally objectionable in that, as an expression of opinion on the ultimate issue of total permanent disability, it was an invasion of the province of the jury. No such objection was made at the trial. Furthermore, Dr. Berk was not asked whether in his opinion Cannon had suffered a total permanent disability within the meaning of the contract. See Corrigan v. United States, 9 Cir., 82 F.2d 106, 108. Hence we are not called upon in the present case to examine the merits of this supposed qualification upon the admissibility of opinion evidence. See the discussion in Hamilton v. United States, 5 Cir., 73 F.2d 357, 358–59; Wigmore on Evidence, 3d Ed., §§ 1920–22, 1975.

Later in the course of Dr. Berk's testimony the trial judge asked him some questions along the same line as above set forth. This examination by the trial judge is now assigned as error; but since the examination proceeded without any objection from Government counsel at the time, it is too late to raise the point on appeal. United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555.

The judgment of the District Court is affirmed.