CARLOS DEL RÍO OLMO, ÁNGEL LUIS y ROSA LYDIA DEL RÍO DELGADO, menores de edad, representados por su padre con patria potestad CARLOS DEL RÍO OLMO y DIANA OLGA DEL RÍO DELGADO, demandantes y apelados, *v.* MANUEL GARCÍA RIVERA, EL PUEBLO DE PUERTO RICO, LA AUTORIDAD DE TRANSPORTE DE PUERTO RICO y THE HARTFORD ACCIDENT AND INDEMNITY CO., demandados y apelantes.

Núm. 9892.—*Sometido:* Febrero 6, 1950. *Resuelto:* Marzo 27, 1950.

*Wilson P. Colberg,* abogado de la apelante The Hartford Accident and Indemnity Co.; *Víctor Gutiérrez Franqui* y *Lino J. Saldaña,* abogados de la apelante Autoridad de Transporte; *Ruiz Suria & Ruiz Suria,* abogados de los apelados; *Carlos N. Souffront,* abogado del Administrador del Fondo del Seguro del Estado, como *amicus curiae* éste.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

### EN RECONSIDERACION.

Carlos del Río Olmo, empleado del Gobierno de Puerto Rico, radicó en 24 de julio de 1946 ante el Tribunal de Distrito de San Juan, demanda de daños y perjuicios contra Manuel García Rivera, El Pueblo de Puerto Rico, La Autoridad de Transporte de Puerto Rico y The Hartford Accident and Indemnity Co. Alegó en ella substancialmente que debido a la culpa y negligencia del demandado García Rivera,

quien conducía una guagua perteneciente a la codemandada Autoridad.de Transporte, él sufrió un accidente el día 21 de marzo de 1946. Contestada la demanda y luego ·de haber desfilado bastante prueba durante el juicio, los demandados solicitaron y obtuvieron del tribunal permiso para enmendar su contestación a los efectos de impugnar la jurisdicción de éste y de alegar que la acción estaba prescrita. Fundaron ambas cuestiones en el artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo, núm. 45 de 18 de abril de 1935, págs. 251, 317. Sostenían que habiendo el demandante acudido previamente al Fondo del Seguro del Estado y que habiendo sido éste indemnizado el 8 de mayo de 1947, el tribunal carecía de jurisdicción para conocer del litigio para la fecha en que se radicó la demanda y además que como tal acción solamente podía entablarse por el obrero lesionado después de haber expirado el término de treinta días siguientes a la fecha de la adjudicación que se hiciera, la acción para aquel entonces estaba prescrita. Declaradas sin lugar las dos cuestiones así planteadas y continuado el juicio, el tribunal inferior dictó sentencia en los méritos del caso declarando con lugar la demanda y condenando a los demandados a pagar al demandante $8,000 por las lesiones recibidas y por su incapacidad permanente, y $3,500 por sus sufrimientos físicos y angustias mentales. Les condenó asimismo a pagar las costas del procedimiento, más la suma de $800 por concepto de honorarios de abogado. De la sentencia así dictada apelaron los demandados y en 29 de julio de 1949 este Tribunal revocó la sentencia dictada por el tribunal a quo, fundado en que de acuerdo con las disposiciones del artículo 31 de la Ley 45, supra, la acción estaba prescrita. 70 D.P.R. 401.

Solicitada la reconsideración por el demandante, concedimos a los demandados un término de quince días para que informaran por escrito sobre el particular. También autorizamos al Administrador del Fondo del Estado, a moción suya, para que compareciera como *amicus curiae*, y señala-

mos una vista para oír a las partes sobre la reconsideración interesada. El estudio acabado que una vez más hemos hecho de la cuestión planteada por la moción para desestimar de las demandadas nos lleva a la conclusión de que estuvimos equivocados al dictar nuestra sentencia de 29 de julio ya citada y de que debemos declarar ahora con lugar la reconsideración solicitada por el demandante y en su consecuencia entrar en los méritos del recurso.

 El artículo 31 de la Ley 45, supra, textualmente copiado reza así:

*"En los casos en que la lesión,* la enfermedad, o la muerte que dan derecho al obrero, empleado o sus beneficiarios a compensaciones, de acuerdo con esta Ley, *le hubiere provenido bajo circunstancias que hacen responsables a terceras personas de tal lesión,* enfermedad o muerte, *el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios de la tercera persona responsable de dicha lesión,* enfermedad o muerte, y *el Administrador del Fondo del Estado podrá subrogarse en los derechos del obrero, empleado o de sus beneficiarios para entablar la misma acción, dentro del tiempo y en la forma que sigue:* ·

"Cuando un obrero o empleado lesionado, o sus beneficiarios en caso de muerte, tuvieren derecho a entablar una acción por daños en contra de una tercera persona, en aquellos casos en que el Fondo del Estado, de acuerdo con los términos de esta Ley, estuviere obligado a compensar en alguna forma o a proporcionar tratamiento a dicho lesionado, *el Administrador del Fondo del Estado, se subrogará en los derechos del obrero, empleado o de sus beneficiarios contra la tercera persona y podrá entablar procedimientos en contra de la tercera persona, y en nombre del obrero, o empleado lesionado o de sus beneficiarios en cualquier tiempo después del accidente,* y en cualquier decisión o adjudicación que se obtenga en exceso de la suma concedida por el Administrador, se dará al obrero o empleado lesionado o a sus beneficiarios.

*"Si el Administrador deja de entablar demanda contra la tercera persona dentro de los treinta (30) días después de la adjudicación hecha, el obrero o empleado lesionado o sus beneficiarios podrán entablar tal acción sin que esto represente una renuncia de sus derechos, de acuerdo con esta Ley;* pero si obtu-

vieran en el cobro daños contra la tercera persona después de haber recibido compensación del Fondo del Estado, la suma que hubieran recibido del Fondo del Estado será devuelta al Administrador y el balance de la suma concedida por la corte, se entregará al obrero o empleado lesionado o a sus beneficiarios.

"Cualquier suma obtenida por el Administrador del Fondo del Estado, por los medios dispuestos en este artículo serán ingresados en el Fondo del Estado a beneficio del grupo particular en que se clasificaba la ocupación o la industria en que se empleaba el obrero o empleado lesionado o muerto." (Bastardillas nuestras.)

No dice ese artículo en forma alguna que cuando la lesión, enfermedad o muerte del obrero o empleado le hubiere provenido bajo circunstancias que hacen responsable a un tercero, el obrero o sus beneficiarios necesariamente tendrán que esperar hasta la expiración del período de treinta días siguientes a la adjudicación que del caso se haga por el Administrador del Fondo para entonces poder acudir ante los tribunales de justicia con una demanda de daños y perjuicios contra la tercera persona causante de la lesión, enfermedad o muerte.(1) Ninguna disposición específica contiene tampoco ese artículo, ni ninguno otro de la Ley de Compensaciones por Accidentes del Trabajo, al efecto de que en casos de tal naturaleza el obrero o empleado lesionado, o sus beneficiarios en caso de muerte, deban recurrir primeramente ante el Administrador del Fondo, ni de que por el mero hecho de haber acudido a éste las manos del obrero o de sus beneficiarios están completamente atadas hasta la expiración del término de treinta días siguientes a la adjudicación del caso. A nuestro juicio, el artículo 31 les da derecho a elegir el

(1) Este caso no envuelve la interpretación del artículo 31, según ha sido enmendado por la Ley 16 de 12 de abril de 1948, pág. 29, cuyo cuarto párrafo de manera taxativa provee:

"El obrero o empleado lesionado, o sus beneficiarios, no podrán entablar demanda ni transigir cualquier derecho de acción que tuvieren contra la tercera persona responsable de los daños hasta después de transcurridos noventa días a partir de la resolución del caso por el Administrador del Fondo del Seguro del Estado."

remedio que estimen más conveniente. Pueden acudir al Fondo del Seguro del Estado con su reclamación correspondiente. También pueden iniciar ante la corte que corresponda una acción de daños y perjuicios contra la tercera persona causante de los daños. Nada, repetimos, hay en la ley que impida que el obrero o sus beneficiarios acudan simultáneamente ante ambos organismos. Lo que de manera expresa sí dispone el artículo 31 es que cuando en casos como el que nos ocupa el obrero o sus beneficiarios tuvieren derecho a entablar una acción contra terceros y el Fondo del Estado estuviere obligado en alguna forma a compensar o a proporcionar tratamiento al lesionado, el Administrador se subrogará en los derechos del obrero o de sus beneficiarios en caso de muerte; que aquél podrá entablar procedimientos, en nombre del obrero, contra el tercero en cualquier tiempo después del accidente; y que si el Administrador dejare de iniciar tal demanda dentro de los treinta días siguientes a la adjudicación, el obrero o sus beneficiarios podrán entablar tal acción *sin que esto represente una renuncia de sus derechos*, de acuerdo con la ley. Interpretamos todo esto en el sentido de que si el obrero lesionado desea acogerse tanto a los beneficios concedidos por la Ley de Compensaciones por Accidentes del Trabajo como a su derecho a acudir ante los tribunales con una acción de daños contra tercero, él deberá esperar que transcurra el período de treinta días siguientes a la adjudicación antes de iniciar su acción judicial, si es que no desea renunciar los derechos concedídosle por la Ley de Compensaciones por Accidentes del Trabajo. El Administrador del Fondo puede, desde luego, subrogarse en los derechos del obrero, y tan pronto tiene conocimiento del accidente ocurrido puede acudir a los tribunales, a nombre del obrero o de sus beneficiarios, con la correspondiente acción de daños y perjuicios contra el tercero causante de la lesión o muerte. En ese caso tampoco hay renuncia por parte del obrero a los beneficios de la Ley de Compensaciones por Accidentes del Trabajo. Empero, si

el obrero o sus beneficiarios entablan acción judicial antes de expirar los treinta días siguientes a la adjudicación por el Administrador del Fondo, entonces, *a contrario sensu*, él o ellos renuncian a los beneficios otorgados por la Ley de Compensaciones a Obreros. Ése es el castigo que la ley le impone por acudir a los tribunales antes de expirado el referido término de treinta días.

*Machado* v. *The American Railroad Co. of Puerto Rico*, 49 D.P.R. 843, fué también un caso en que las lesiones recibidas por el obrero fueron causadas por la culpa y negligencia de un tercero. Resolvimos en él que el obrero tenía derecho a reclamar indemnización de la tercera persona, no obstante haber recibido compensación bajo la Ley de Indemnizaciones a Obreros. Desde luego, el estatuto allí interpretado no estaba concebido en términos idénticos a como reza el artículo 31 de la tantas veces citada ley. En dicho caso se interpretó el artículo 45 de la Ley 85 de 1928, pág. 631, que literalmente copiado lee así:

"Sección 45.—En los casos que la lesión por la cual el obrero tiene derecho a indemnización de acuerdo con esta Ley, le hubiere sido causada bajo circunstancias que creen una responsabilidad contra tercera persona o contra el patrono por lesiones causadas por su acto ilegal o negligencia criminal (*willful misconduct*) o por defecto en las maquinarias o implementos si el obrero o sus herederos hubieren recibido indemnización, de acuerdo con esta Ley, del fondo de seguros del Estado, la Comisión Industrial se subrogará en los derechos del obrero lesionado o sus herederos, y podrá entablar y obtener daños y perjuicios de la tercera persona o del patrono responsable de dicha lesión, los cuales daños y perjuicios una vez obtenidos, serán ingresados en el Fondo de Indemnizaciones a Obreros a beneficio del grupo particular en que estaba clasificada la ocupación del obrero lesionado."

Mas, no obstante el contexto de ese artículo, se llegó a la conclusión que ya hemos enunciado y se dijo a la página 847 que: "El derecho de la Comisión Industrial a la subrogación no es óbice para que el obrero obtenga la indemnización que le corresponda del tercero culpable, mediante una

acción judicial. *El hecho de que una persona tenga derecho a subrogarse en los derechos de otra, no impide que ésta ejercite una acción para hacer valer sus derechos. . . . La subrogación no implica un derecho exclusivo para ejercitar la acción. . . .* Si éste promueve la acción después de recibir la compensación, la Comisión Industrial tendrá derecho a una reclamación que cubra la suma que le satisfizo al obrero." (Bastardillas nuestras.) Véase también *Sucesión Sanabria* v. *White Star Bus Line,* 50 D.P.R. 756, en el cual se llegó a la misma conclusión que en el de *Machado.*

▆▆▆ No vemos en verdad en el artículo 31 nada que impida que el obrero acuda al Fondo del Seguro del Estado y que antes de expirado el término de treinta días siguientes a la adjudicación por el Administrador del Fondo inicie una acción judicial. Como el accidente en este caso ocurrió el 21 de marzo de 1946, la acción de daños y perjuicios instada por el demandante no podía estar prescrita en 24 de julio del mismo año. Según el artículo 1868 del Código Civil, ed. 1930, él tenía un año para así hacerlo. Además, como en la acción de daños y perjuicios se reclamaba una suma en exceso de $500, el Tribunal de Distrito de San Juan tenía claramente jurisdicción para conocer del mismo.[2] *Rivera* v. *Goytía,* 70 D.P.R. 30.

Dadas las anteriores consideraciones la moción de reconsideración presentada por el demandante debe ser declarada con lugar, y dejarse sin efecto la sentencia ya dictada, haciéndose necesario en su consecuencia entrar en los méritos del recurso. Los dos primeros errores señalados por los demandados al efecto de que el tribunal inferior cometió error al declararse con jurisdicción y al no resolver que la acción estaba prescrita, no han sido, por tanto, cometidos.

▆▆▆ El tercer error señalado imputa a la corte inferior haber errado al admitir el testimonio de los doctores

---

[2] El hecho de que el obrero lesionado recibiera compensación del Fondo del Estado en 8 de mayo de 1947 no desempeña papel alguno a los fines de las cuestiones suscitadas.

Diego Biascoechea y José D. Jiménez con respecto a manifestaciones héchasles por el propio demandante con referencia a sus lesiones. El primero de dichos facultativos asistió al demandante desde la noche que lo llevaron inconsciente a su clínica hasta el día que le dieron de alta; el segundo, perito psiquiatra, le examinó algún tiempo después que el obrero salió de la clínica del primero. Las declaraciones de éstos respecto a las lesiones sufridas por el demandante y sobre el estado en que el mismo se hallaba, al igual que respecto a las manifestaciones que el demandante les hizo con relación a las lesiones por él recibidas y respecto a cómo se sentía, eran claramente admisibles. *United States* v. *Cannon*, 116 F.2d 567; 136 A.L.R. 980; 130 A.L.R. 977. Además, el Dr. Jiménez fué ampliamente repreguntado por los demandados, renunciándose así a cualesquiera objeciones que pudieran existir respecto a la inadmisibilidad de su testimonio. *López* v. *Bravo*, 68 D.P.R. 506, 508.

 Los errores cuarto y quinto son al efecto de que el tribunal inferior erró al apreciar la prueba y al conceder la cuantía que aparece de la sentencia.

Là prueba del demandante tendió a demostrar que el día 21 de marzo de 1946, como a las 9 p.m., éste se bajó frente a su casa en la Avenida Borinquen, de Santurce, de una guagua que dirigía de Oeste a Este, o sea, de Martín Peña hacia el sitio conocido por La Cantera; que en ese momento una guagua de las llamadas independientes que por la misma avenida se dirigía a San Juan se detuvo en la parada que queda poco después de cruzar una calle transversal conocida por Cortijo; que la guagua de la demandada Autoridad de Transporte, conducida por Manuel García Rivera, que se dirigía también por dicha avenida hacia San Juan, marchaba a bastante velocidad y al tratar de pasar junto a la guagua independiente al reiniciar ésta su marcha, arrolló al demandante Del Río Olmo, quien en ese momento salía por detrás de la guagua de la cual se había desmontado; y que la velocidad del vehículo guiado por García Rivera era tal que al

frenar produjo bastante ruido, dejó las huellas de sus llantas en la carretera, se lanzó hacia la izquierda y arrolló al demandante, quedando éste inconsciente, con la cabeza como a 18 ó 20 pulgadas de la acera izquierda.

La de los demandados fué al efecto de que el demandante se lanzó a cruzar la carretera de Sur a Norte por detrás de la segunda de dos guaguas que estaban detenidas al lado Sur de la Avenida Borinquen; que en ese momento la guagua conducida por García Rivera marchaba por la dicha avenida a velocidad moderada y en dirección a San Juan; que si el demandante hubiera seguido su marcha hacia delante el accidente no hubiera ocurrido, pero que éste, cuando ya iba por el centro de la carretera, al ver la guagua de los demandados dió varios pasos hacia atrás y al frenar García Rivera la guagua no pudo evitar el accidente, debiéndose el mismo a la negligencia del demandante.

La prueba, como se ha visto, fué contradictoria, pero el tribunal inferior era el llamado a dirimir el conflicto existente y así lo hizo. A nuestro juicio hay suficiente prueba en los autos para justificar la conclusión a que llegó. Véanse *Pérez* v. *Cruz Batista* y *Varela* v. *Fuentes Rolón*, 70 D.P.R. págs. 933 y 879, respectivamente. Aunque aceptemos que el hecho de lanzarse el demandante a cruzar la carretera de Sur a Norte por detrás de una guagua estacionada constituya negligencia, sin embargo, el factor principal a ser determinado en casos como el presente, no es si el demandante fué o no negligente sino más bien cuál fué la causa próxima del accidente. *Pérez* v. *Santiago*, 56 D.P.R. 763, 766; *López* v. *Rexach*, 58 D.P.R. 143, 155.

La prueba aducida por el demandante también tendió a demostrar que para la época del accidente él era hombre de poco más de cincuenta años, durante unos treinta de los cuales trabajó para el Gobierno de Puerto Rico siendo a la fecha del accidente segundo oficial de contabilidad del Negociado de Contaduría General del Departamento de Hacienda

de Puerto Rico y siendo su sueldo para aquel entonces la suma de $200 mensuales. También demostró la prueba, expuesta a grandes rasgos, que al sufrir el accidente el demandante estuvo recluído unos ochenta días en la Clínica Biascoechea y que fué llevado allí en estado de inconsciencia; que como resultado del accidente recibió varias heridas en la cabeza, fuertes contusiones en el pecho, una fractura múltiple de la rodilla en los huesos de la tibia y fíbula, y que aunque la radiografía del cráneo no demostraba evidencia de fractura, los síntomas que el demandante presentaba revelaban que había habido una fractura de la base del cráneo; que como resultado del accidente el demandante camina con dificultad y no puede subir escaleras; que ha perdido la memoria; que está incapacitado para continuar trabajando en la clase de trabajo que desempeñó hasta entonces y ha tenido que renunciar su empleo en el Gobierno; que ha perdido notablemente su capacidad adquisitiva de conocimientos nuevos; que presenta cambios permanentes en su personalidad como consecuencia de un traumatismo craneal; que su capacidad intelectual está empobrecida notablemente y no podrá volver a trabajar nunca como contable. Bajo estas circunstancias no creemos que la indemnización total concedida sea excesiva.

*Debe dictarse sentencia declarando con lugar la reconsideración solicitada, dejando por ende sin efecto la sentencia dictada por este Tribunal en 29 de julio de 1949 y confirmando la dictada por el tribunal inferior con fecha 10 de junio de 1948.*

El Juez Presidente Sr. De Jesús disintió por los fundamentos expuestos en la opinión que sirvió de base a la sentencia que aquí se reconsidera. 70 D.P.R. 401.

El Juez Asociado Sr. Snyder está conforme con el resultado.