Joaquín Gallart Mendía, *ex rel.,* Isolina Peña Rodríguez demandantes y recurrentes, *v.* Banco Popular de Puerto Rico et al., demandados y recurridos.

Número: R-64-200     Resuelto: 26 de febrero de 1965

*Donald R. Dexter, Emilio Delgado Roque* y *Wilfredo Márquez,* abogados de los recurrentes; *Rivera Zayas, Rivera Cestero & Rúa* y *Francisco Agrait Oliveras,* abogados del Banco Popular de Puerto Rico y de la Great American Insurance Company; *Emilio de Aldrey,* abogado de Acoustical & Remodeling Contractors, Inc.; *Manuel Orraca Torres,* abogado de Isolina Peña:

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 16 de junio de 1962 la Comisión Industrial emitió decisión final en la reclamación de doña Isolina Peña Rodríguez, empleada de la Universidad de Puerto Rico, quien había sufrido un accidente del trabajo un año antes. Dentro del término de noventa días de haberse dictado dicha resolución, el Administrador del Fondo del Seguro del Estado y la mencionada empleada entablaron demanda contra el Banco Popular de Puerto Rico y Acoustical & Remodeling Contractors, Inc., en la cual alegaron que el accidente se debió a la negligencia de las demandadas mencionadas al mantener un riesgo contra la seguridad pública—un pedazo de cuartón fijado al suelo con un clavo que sobresalía del mismo—en un local de la mencionada institución bancaria. Específicamente se hizo referencia a que "el Administrador del Fondo del Seguro del Estado . . ., quien se subroga en los derechos del [*sic*] co-demandante Isolina Peña Rodríguez demanda por sí y a nombre del mismo [*sic*], de conformidad con las disposiciones del artículo 31 de la Ley núm. 45 de 1935, conocida por la Ley de Compensaciones por Accidentes del Trabajo . . . por jornales perdidos, hozpitalización [*sic*], compensación y asistencia médica del obrero . . . en la suma de $1,072.-08." Adújose, además, que los daños sufridos por la señora Peña ascendían a la suma de $20,000, solicitándose en tal virtud sentencia por la suma total de $21,072.08 "para ser distribuida en la siguiente proporción: para el Fondo del Seguro del Estado, $1,072.08 y para la codemandante Isolina Peña Rodríguez la suma de $20,000." El escrito de demanda aparece firmado por los licenciados Donald R. Dexter, Wilfredo Márquez y Felipe Benicio Sánchez, como abogados del Administrador del Fondo del Seguro del Estado y por el licenciado Manuel Orraca Torres, como abogado "del obrero [*sic*] co-demandante."

Contestaron los demandados. El Banco Popular y su aseguradora Great American Indemnity Co. se limitaron a exponer una negativa general de los hechos, con excepción

de la existencia de una póliza de seguro, y como defensa especial alegaron afirmativamente la falta de intervención del asegurado en el acto de fijar en el suelo el cuartón o pedazo de madera que causó el accidente. La Acoustical & Remodeling Contractors, Inc., entre otras defensas, interpuso la falta de capacidad de la demandante para instar la acción. En contestación a interrogatorios notificados por el demandado Banco Popular de Puerto Rico, el Administrador y la señora Peña los contestaron separadamente, según la información solicitada estuviera dentro de su particular conocimiento.

Conviene apuntar que son hechos admitidos que para la fecha de la ocurrencia del accidente la señora Peña era casada con don Frank Rodríguez Sala y que para la de la iniciación de la demanda no se encontraba separada de éste.

Llamado el caso para vista el juez de instancia llamó la atención de las partes sobre el estado civil de la señora Peña Rodríguez y, con el deseo de hacer cumplida justicia, ordenó que la demanda se tuviera por enmendada a los fines de que se considerara a la sociedad de gananciales como parte demandante. No obstante en 9 de junio de 1964 dictó sentencia manifestando que "careciendo Doña Isolina Peña de causa de acción, era su obligación ineludible la de declarar sin lugar la demanda y permitir a la sociedad de gananciales incoar una nueva acción." Dejó sin efecto su resolución permitiendo la enmienda a las alegaciones y desestimó la demanda, sin perjuicio. [1]  Acordamos revisar la sentencia.

Desde el año 1920, *Vázquez* v. *Valdés*, 28 D.P.R. 467, hasta recientemente en *Gearheart* v. *Haskell*, 87 D.P.R. 57 (1963) hemos sostenido que pertenece a la sociedad de gananciales la causa de acción por los daños sufridos por cualquiera de los cónyuges, y que es al marido como administrador de la sociedad a quien corresponde entablar la gestión

---

[1] Cualquier nueva demanda que se radicara estaría prescrita por haber transcurrido más de un año desde la fecha en que se dictó la resolución firme y ejecutoria del Administrador.

judicial para exigir su resarcimiento. *Vázquez v. Puerto Rico Ry., L. & P.,* 35 D.P.R. 62 (1926); *Irizarry v. Díaz Ojea,* 35 D.P.R. 144 (1926); *Flit v. White Star Bus Line, Inc.,* 49 D.P.R. 144 (1935); *González v. White Star Bus Line,* 53 D.P.R. 345 (1938); *Segarra v. Vivaldi,* 59 D.P.R. 803 (1942); *Guadalupe v. Corte,* 65 D.P.R. 293 (1945); *Serrano v. González,* 68 D.P.R. 623 (1948); *Serra v. Autoridad de Transporte,* 68 D.P.R. 626 (1948); *Rivera v. De Martínez,* 70 D.P.R. 482 (1949); *Meléndez v. Iturrondo,* 71 D.P.R. 60 (1950); *Echevarría v. Despiau,* 72 D.P.R. 472 (1951); *Vega v. Cía. Popular de Transporte,* 72 D.P.R. 525 (1951). Corolario de esta doctrina es que en los casos en que la esposa ha iniciado el pleito, hemos determinado que se trata no meramente de un defecto de parte, sino de ausencia de causa de acción. Para un reexamen de esta cuestión, véanse, Anotación, *Spouse's cause of action for negligent personal injury as separate or community property,* 35 A.L.R.2d 1199 (1954); de Funiak, *Personal Injuries Under the California Community Property Law,* 15 La. L. Rev. 526 (1955); y especialmente, nota en 31 Chi-Kent. L. Rev. 251 (1953), en donde se caracteriza la doctrina como un "anacronismo social" y se critica el razonamiento empleado para sostenerla como un método puramente mecánico de interpretación estatutaria.

## I

Sostiene la parte recurrente que el Art. 31 de la Ley de Accidentes del Trabajo, 11 L.P.R.A. sec. 32, establece un procedimiento especial que, a su vez, crea una causa de acción a favor del Administrador del Fondo del Estado. Insinúa que en realidad la sociedad conyugal no es parte en el procedimiento por pertenecer la causa de acción únicamente a dicho funcionario. No le asiste la razón.

El derecho de subrogación contra el tercero causante del daño fue consagrado desde la primera ley de compensaciones a obreros, Art. 27 de la Ley Núm. 19 de 13 de abril de 1916

(Leyes, págs. 51, 64). Se conservó en el Art. 22 de la Ley Núm. 10 de 25 de febrero de 1918 (Leyes, págs. 55, 83) y en la Sec. 45 de la Ley Núm. 84 de 14 de mayo de 1928 (Leyes, págs. 625, 685), con el siguiente lenguaje:

"En los casos que la lesión por la cual el obrero tiene derecho a indemnización de acuerdo con esta Ley, le hubiese sido causada bajo circunstancias que creen una responsabilidad contra tercera persona . . . si el obrero o sus herederos hubiesen recibido indemnización de acuerdo con esta Ley, del fondo de seguros del Estado, la Comisión Industrial se subrogará en los derechos del obrero lesionado o sus herederos, y podrá entablar y obtener daños y perjuicios de la tercera persona . . ., los cuales daños y perjuicios una vez obtenidos, serán ingresados en el Fondo de Indemnizaciones a Obreros a beneficio del grupo particular en que estaba clasificada la ocupación del obrero lesionado."

Interpretando el alcance de la disposición transcrita en cuanto a la facultad para el ejercicio de la acción de daños contra el tercero causante del daño, en *Machado* v. *The Amer. R.R. Co. of P.R.*, 49 D.P.R. 843 (1936), sostuvimos que el obrero o empleado "puede demandar también a una tercera persona, cuando así lo desee, sin que esté sujeto en el ejercicio de su derecho a limitación legal alguna." Específicamente dijimos, a las págs. 847–848, que "El derecho de la Comisión Industrial a la subrogación no es óbice para que el obrero obtenga la indemnización que le corresponda del tercero culpable, mediante una acción judicial. El hecho de que una persona tenga derecho a subrogarse en los derechos de otra, no impide que ésta ejercite una acción para hacer valer sus derechos. La persona con derecho a subrogarse puede reclamar lo obtenido por el obrero en dicha acción. *La subrogación no implica un derecho exclusivo para ejercitar la acción.*" Fúndase el reconocimiento del derecho del obrero para dirigirse contra el tercero en que si el efecto de la subrogación fuere impedir al obrero instar tal acción, el resultado sería que la persona responsable del daño "quedaría relevado de satisfacer cualquier suma que hubiese tenido la obligación

de pagar, en exceso de la satisfecha por el patrono" (pág. 851). En el mismo sentido se pronunció *Sucn. Sanabria* v. *White Star Bus Line, Inc.,* 50 D.P.R. 756 (1936). Vemos pues cómo desde los comienzos este derecho de subrogación no se considera como que implica un derecho exclusivo de la agencia gubernamental para ejercitar la acción contra el tercero causante del daño.

El Art. 31 de la Ley Núm. 45 de 18 de abril de 1935 (Leyes, págs. 251, 317, 319), preservó el derecho de subrogación pero proveyó más específicamente en cuanto al ejercicio de la acción contra el tercero en la siguiente forma:

"Cuando un obrero o empleado lesionado, o sus beneficiarios en caso de muerte, tuvieren derecho a entablar una acción por daños en contra de una tercera persona, en aquellos casos en que el Fondo del Estado, de acuerdo con los términos de esta Ley, estuviere obligado a compensar en alguna forma o a proporcionar tratamiento a dicho lesionado, el Administrador del Fondo del Estado se subrogará en los derechos del obrero, empleado o de sus beneficiarios contra la tercera persona y podrá entablar procedimientos en contra de la tercera persona, y en nombre del obrero, o empleado lesionado o de sus beneficiarios en cualquier tiempo después del accidente, y en cualquier decisión o adjudicación que se obtenga el exceso de la suma concedida por el Administrador, se dará al obrero o empleado lesionado o a sus beneficiarios.

"Si el Administrador deja de entablar demanda contra la tercera persona dentro de los treinta (30) días después de la adjudicación hecha, el obrero o empleado lesionado o sus beneficiarios podrán entablar tal acción sin que esto represente una renuncia de sus derechos, de acuerdo con esta Ley; pero si obtuvieran en el cobro de daños contra la tercera persona después de haber recibido compensación del Fondo del Estado, la suma que hubieran recibido del Fondo del Estado será devuelta al Administrador y el balance de la suma concedida por la corte, se entregará al obrero o empleado lesionado o a sus beneficiarios."

■ En la primera ocasión en que se interpreta esta disposición se aclara en forma precisa y terminante que dicho artículo no crea una nueva causa de acción que hasta entonces

no existiera a beneficio de los herederos, o beneficiarios en su caso, del obrero. Dícese en *Cordero, Admor.* v. *Am. Railroad Co.*, 66 D.P.R. 460, 464 (1946) : ". . . la responsabilidad de dicho tercero por la muerte siempre ha existido a favor de los herederos del finado, independientemente de la Ley núm. 45. El artículo 31 de la Ley núm. 45 no tiene por miras derogar esta causa de acción. *Tampoco sustituye dicha acción por una a favor de los beneficiarios* bajo el inciso 5 del artículo 3. El artículo 31 más bien dispone sencillamente que si un beneficiario tiene tal acción, el Administrador queda subrogado en ella." (²) En otras palabras que lo que le insufla vida al derecho de subrogación es la existencia de una causa de acción bajo los principios de la responsabilidad extracontractual. Dedúcese, por tanto, que cuando se trata de la lesión, enfermedad ocupacional o muerte de una mujer casada, la causa de acción que el Administrador ejercita por vía de subrogación es la que corresponde a la sociedad de gananciales.

Para perfilar más diáfanamente que la acción en subrogación del Administrador es limitada, el Art. 31 fue enmendado por la Ley Núm. 16 de 12 de abril de 1948 (Leyes, pág. 29), para requerir entre otras cosas que "El obrero o empleado o sus beneficiarios serán parte en todo procedimiento que entable el Administrador bajo las disposiciones de este artículo, y será obligación del Administrador notificar por escrito a las mismas de tal procedimiento dentro de los cinco (5) días de iniciada la acción." De ahí que en caso de decretarse el aseguramiento de la sentencia que pudiera recaer en el pleito contra el tercero, no se exigiera fianza al Administrador hasta el importe de la suma por éste desembolsada, mas no así en cuanto a cualquier exceso reclamado para beneficio del obrero o empleado. *Atiles, Admor.* v. *Tribl. de Dis-*

---

(²) Tanto es así que, bajo la doctrina entonces imperante, en un caso de muerte "si los beneficiarios no son los herederos del finado [como podía acontecer por tratarse la ley de una de dependencia] no tienen derecho alguno en los cuales pueda subrogarse al Administrador, bajo el artículo 31." *Cordero, Admor.* v. *Am. Railroad Co.*, 66 D.P.R. 460, 466 (1946).

*trito,* 73 D.P.R. 949 (1952). Otro de los propósitos de la ley de 1948 fue conceder al Administrador la primera oportunidad para radicar la acción contra el tercero dentro del término de noventa días—dejando así sin efecto la decisión en *Del Río* v. *García,* 71 D.P.R. 93 (1950)—, más "en ese procedimiento judicial instado por el Administrador es que él puede hacer efectivo su derecho de subrogación, estando limitado *ese derecho a los gastos ya incurridos por el Administrador en virtud de su resolución anterior,"* *Negrón* v. *Comisión Industrial,* 76 D.P.R. 301, 308 (1954).

■ Si a estas expresiones judiciales sumamos el examen de los párrafos del Art. 31 sobre las transacciones que pueden llevarse a cabo en los pleitos contra el tercero responsable— se autoriza al Administrador a transigir *"sus derechos"* contra el tercero, pero ninguna transacción extrajudicial puede afectar *"los derechos* del obrero o empleado o de sus beneficiarios" sin que medie la conformidad o aprobación expresa de éstos; y, el obrero o empleado o sus beneficiarios pueden transigir dentro de los 90 días de ser firme y ejecutoria la decisión del Administrador, o luego de iniciarse la acción por éste, siempre que se satisfagan los gastos incurridos por el Fondo del Seguro del Estado—y otras disposiciones de la Ley que se refiere a supuestos de subrogación—el Art. 15, 11 L.P.R.A. sec. 16, contempla los casos del reembolso al Fondo de la compensación pagada al obrero de un patrono no asegurado; y, más específicamente, el derecho de subrogación de un patrono no asegurado contra el tercero causante del daño[3]—la conclu-

---

[3] "En los casos declarados no asegurados, en que el accidente surja debido a la negligencia del tercero, el patrono no asegurado que haya satisfecho al Fondo del Seguro del Estado el monto de la liquidación del caso, o haya asegurado su pago mediante el depósito de una fianza a satisfacción del Administrador, podrá subrogarse en los derechos del obrero para resarcirse de los gastos incurridos como consecuencia del accidente. El obrero o empleado o sus beneficiarios serán parte en el procedimiento que se estableciere con el fin de ejercitar la causa de acción que tengan contra el tercero o contra el patrono no asegurado, según sea el caso y cualquier suma que se recobrare en exceso de la suma satisfecha al Fondo

sión es inevitable de que la acción a que se refiere el Art. 31 no pertenece al Administrador, sino propiamente al obrero lesionado o sus beneficiarios, y que para que prospere la causa de acción debe estar reconocida a favor de dicho obrero o sus beneficiarios. (⁴)

En el presente caso la causa de acción contra el tercero responsable del daño pertenecía a la sociedad de gananciales. La comparecencia única de la esposa lesionada era insuficiente.

## II

No obstante, la trayectoria de nuestra jurisprudencia sobre la doctrina de que pertenece a la sociedad de gananciales la acción por daños causados a uno de los cónyuges revela cierta reticencia que nos ha llevado a no ser muy rigurosos en la aplicación de ·dicha regla. Así, en *Echevarría* v. *Despiau*, supra, expresamos que el hecho de que de la demanda por daños personales al esposo no conste que aquélla se incoa a nombre y para beneficio de la sociedad conyugal no significa que por ello no aduzca una causa de acción *si durante el juicio* reiteradamente surge que el demandante era casado tanto para la fecha del accidente como de la radicación de la acción, y que en tales circunstancias podía el juez *motu proprio* considerar la instancia como enmendada por la prueba. Añadimos que el marido no necesitaba hacer figurar el carácter representativo en que comparecía. Y en *Meléndez* v. *Iturrondo*, supra, invocando la regla de que las alegaciones en el cuerpo de la demanda son el aspecto fundamental del caso, dijimos que en una demanda instada por la esposa lesionada "acom-

---

del Estado por el patrono no asegurado para cubrir la liquidación del caso, se hará efectiva al lesionado, o a sus beneficiarios en caso de muerte, sin el consentimiento de los cuales ninguna transacción extrajudicial tendrá validez."

(⁴) *Sierra* v. *Tribunal Superior*, 81 D.P.R. 554 (1959), en donde discutimos el alcance de la representación de obreros por el Secretario del Trabajo en pleitos de reclamaciones de salarios, presenta una situación claramente distinguible. Véanse, especialmente, las págs. 566 a 570.

pañada" o "asistida" por su marido, la alegación referente a las lesiones recibidas por la demandante no debe entenderse que alegan una causa de acción exclusivamente para beneficio de la esposa, sino más bien como una descripción de las lesiones por las cuales el marido, en su carácter de administrador de la sociedad de gananciales, demanda en daños en representación de la sociedad. Véase, la opinión concurrente del actual Juez Presidente Señor Negrón Fernández, págs. 64–66. Al mismo efecto, *Serra* v. *Autoridad de Transporte,* supra; *Segarra* v. *Vivaldi,* supra; cf. *Guadalupe* v. *Corte,* supra.

Al igual que en el caso de *Meléndez,* supra, un examen cuidadoso de los autos nos permite concluir que en cierta etapa de los procedimientos ante el tribunal de instancia, cuando aún no había transcurrido un año desde la fecha en que la adjudicación del Administrador fue firme y ejecutoria, (5) las alegaciones quedaron enmendadas para que pueda razonablemente entenderse que la acción se ejercita por el Administrador para beneficio de la sociedad de gananciales. En 26 de noviembre de 1962 se celebró una conferencia preliminar al juicio y durante la misma uno de los abogados de la parte demandante manifestó que "Hay un interrogatorio contestado donde aparece quiénes son los testigos, la teoría del caso y los conceptos por los cuales *reclama,* desglosados." Se refiere a la siguiente contestación:

"(a) Por las lesiones físicas de Isolina Peña
   Rodríguez            $12,000
 (b) Por las angustias mentales sufridas por ésta *y por*
   *su esposo Frank Rodríguez Sala*     7,000
 (c) Por pérdida de ingresos de ésta y su *esposo*   750
 (d) *Por gastos para tratamiento médico y trans-*
   *portación*             250"

---

(5)*Moreno* v. *Penzol,* 73 D.P.R. 12 (1952), fue dejado sin efecto mediante la Ley Núm. 70 de 15 de junio de 1955 (Leyes, pág. 259), que enmendó el Art. 31.

A nuestro juicio el cuerpo de la demanda así enmendada suficientemente demuestra que la sociedad de gananciales es la parte realmente demandante. Con diferencia de grado, a un resultado similar llegamos en el caso de *Serra* v. *Autoridad de Transporte*, supra.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 9 de junio de 1964, y habiéndose celebrado la vista en sus méritos, se devolverá el caso a dicha sala de instancia para que formule las correspondientes determinaciones de hecho y conclusiones de derecho respecto a la cuestión de negligencia.*