JULIA RIVERA DE VINCENTI y OTROS, demandantes y recurridos, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO y OTROS, demandados y peticionarios.

*Número:* O-78-334      *Resuelto:* 28 de noviembre de 1978

66

Héctor A. Colón Cruz, Procurador General, Maggie Correa Avilés, Procuradora General Auxiliar, abogados de los peticionarios; Enrique Irizarry Ortiz, Antonio Acevedo Torres y Francisco Falú Lebrón, abogados de la Administradora del Fondo del Seguro del Estado.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El 4 de junio de 1969 el obrero Angel E. Caraballo Albarracín se hallaba en el curso de su trabajo para su patrono asegurado en jurisdicción de Maunabo cuando fue golpeado en la cabeza por una piedra lanzada al aire al explotar una carga de dinamita, detonada por empleados del Departamento de Transportación y Obras Públicas en los trabajos de construcción de una carretera. El caso fue informado al Fondo del Seguro del Estado y el cuadro clínico revela dolores de cabeza, intranquilidad, pesadillas, condición irritable, dos intentos de suicidio, falta de memoria y desorientación que evaluado por un siquiatra del Fondo al darlo de alta el 30 de octubre de 1974 fue base para un diagnóstico de *síndrome cerebral orgánico no sicótico*, y otro siquiatra determinó que la dicha es condición relacionada con el accidente del trabajo, incapacidad estimada en 25%. Dos años después, el 22 de

julio de 1976 el mismo siquiatra, luego de informar que el Fondo le había reconocido una incapacidad original de 5% [*sic*] repite los mismos síntomas de su evaluación de 1974, pero esta vez dice que representan un 100% de incapacidad, y así lo determinó la Administradora.

En junio de 1977, pasados ocho (8) años del accidente y a raíz de su decisión administrativa de 29 de abril de 1977, la Administradora del Fondo del Seguro del Estado radicó demanda subrogada([1]) de daños y perjuicios por negligencia en la Sala de Humacao, contra el Estado Libre Asociado y el Departamento de Transportación y Obras Públicas en la que alega la referida condición de incapacidad total permanente del obrero y reclama $36,911.32 de gastos del Fondo y $100,000 para el obrero.

El Estado pidió la desestimación de la demanda fundada en prescripción de 1 año (Art. 1868 Código Civil—31 L.P.R.A. sec. 5298); falta de consentimiento del Estado para este tipo de acción e incumplimiento con el requisito de previa notificación dispuesto en 32 L.P.R.A. sec. 3077a. La sala de instancia desestimó estas defensas del Gobierno y al recurrir en *certiorari* expedimos el 5 de octubre de 1978 la siguiente orden:

"La parte demandante y recurrida tendrá un término hasta el 27 de octubre de 1978 para comparecer a mostrar causa por la que no deba anularse la resolución recurrida y en su lugar dictar sentencia desestimatoria fundada en la falta de consentimiento del Estado a este tipo de reclamación subrogada, prescripción y falta de notificación previa en una demanda contra el Estado Libre Asociado como tercero causante de daño que se inicia 8 años después de ocurrido el accidente del trabajo."

El Sr. Procurador General, destacando la falta de notificación previa exigida por 32 L.P.R.A. sec. 3077a, hace el siguiente argumento a la pág. 8 de la solicitud de *certiorari:*

---

([1]) Subrogación autorizada por el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 32) en la cual el obrero es la parte realmente interesada a quien pertenece la causa de acción. *Gallart, Admor.* v. *Banco Popular,* 91 D.P.R. 818, 826–27 (1965).

"Aún asumiendo, sin admitirlo, que el Fondo del Seguro del Estado tenía la facultad para subrogarse en lugar del obrero en una reclamación en contra del Estado Libre Asociado de Puerto Rico, el requisito de notificación debía ser cumplido por el Fondo del Seguro del Estado. Si el término para instar la acción por el Fondo comenzó al ser firme la resolución del Administrador del Fondo entonces debemos concluir que los 90 días para notificar al Secretario de Justicia de la reclamación también comenzaron después de ser firme la resolución del Administrador. Si el Fondo se subroga en lugar del obrero tiene que cumplir con los requisitos impuestos por la ley al obrero, o sea, el Fondo no sólo adquiere los derechos del obrero sino también adquiere sus deberes. Por lo tanto, el Administrador del Fondo en el caso de epígrafe, si iba a subrogarse en lugar del obrero, tenía que notificar de la reclamación al Secretario de Justicia dentro de los 90 días siguientes al momento en que fue firme la resolución del Administrador en el caso. Ni el Fondo ni el obrero notificaron al Secretario de Justicia de esta reclamación en la forma en que lo requiere la ley aplicable. Debemos concluir que la acción interpuesta en contra del Estado Libre Asociado de Puerto Rico no puede sostenerse ya que el derecho a demandar al Estado no surge a menos que se cumpla con el requisito de la notificación. Véase, *Gregorio Cortés Román* v. *E.L.A.*, Ref. Col. Abog. 104–1977."

▇▇▇▇ Contra esta alegación, la Administradora recurrida sólo opone el argumento de que el emplazamiento, diligenciado dentro de los 90 días siguientes a la fecha en que advino firme su decisión, satisfizo tal requisito. Baste recordar que el emplazamiento se expide al radicarse la demanda, y que con ésta se *inicia* la acción civil. El inciso (e) de 32 L.P.R.A. sec. 3077a es terminante en cuanto a la precedencia de la notificación al disponer: "[n]o podrá *iniciarse* acción judicial de clase alguna contra el Estado Libre Asociado de Puerto Rico . . . si no se hubiese efectuado la notificación escrita . . . ."

▇▇▇▇ La extremosa posición de los demandados peticionarios, hasta ahora la de este Tribunal,(2) queda expuesta en

---

(2) En *Rodríguez Sosa* v. *Cervecería India,* 106 D.P.R. 479 (1977), impusimos el rigor de dicho requisito previo a un demandado que presentó

alto relieve, imponiendo un requisito de notificación que para todo efecto es un gesto fútil e inoperante considerando que transcurrieron ocho años desde que el disparo de dinamita incapacitó a este obrero en junio de 1969 hasta que recayó una decisión administrativa final y firme del Fondo del Seguro del Estado en junio de 1977. El rigorismo desmedido en la exigencia de la notificación previa, que evade el elemento atemperante de "justa causa" provisto en el estatuto, no debe ser rémora en la evolución del pensamiento jurídico que tanto en la legislación como en la jurisprudencia está en marcha contra las inequidades residuales del otrora culto a la inmunidad del soberano, impulsado por el contemporáneo concepto que iguala al Estado y al ciudadano ante el tribunal. En todo caso en que la tardanza en exceso de 90 días de ocurrido el accidente, no imputable al demandante en daños y perjuicios contra el Estado Libre Asociado, torne inútil e inoperante la notificación previa ordenada por el Art. 2A de la Ley Núm. 104 de 29 de junio de 1955 (32 L.P.R.A. sec. 3077a), tal notificación no será requerida, y el demandante será relevado de su observancia por justa causa. La referida notificación en el plazo relativamente corto de 90 días tiene el propósito de poner sobre aviso al Gobierno de que ha surgido una probable causa de acción por daños en su contra de modo que pueda activar sus recursos de investigación prontamente, antes de que desaparezcan los testigos y las pruebas objetivas en orden a la preparación de una adecuada defensa contra la reclamación o una transacción adecuada de la misma, cuando proceda. *Mangual* v. *Tribunal Superior*, 88 D.P.R. 491 (1963). El paso del tiempo disminuye gradualmente el valor de esta notificación hasta que llega el momento en que la misma no provee mayor utilidad al Estado que la información contenida en la demanda y la obtenible por los medios de descubrimiento

---

demanda de tercero contra el Estado, desestimando la alegación porque no cumplió con el requisito de notificación dentro de los 90 días siguientes al emplazamiento, a pesar de que transcurrido más de un año del acto torticero tal notificación había perdido toda eficacia.

70

de prueba. Insistir en que rebasado ese punto empiecen a contarse los 90 días partiendo de otros eventos como la notificación de una alegación o la decisión administrativa en el presente caso, agotada toda virtualidad y propósito, es trasladar la controversia justiciable a los predios de lo académico y ficticio. El estatuto señala como punto de partida para la notificación "la fecha en que el reclamante tuvo conocimiento de los daños que reclama."

■ Hemos calificado la notificación previa como requisito de cumplimiento estricto que no alcanza la calidad de condición precedente jurisdiccional porque así se libera al juzgador de un automatismo dictado por el calendario y salva su facultad para conocer del caso y proveer justicia según lo ameriten las circunstancias. *Loperena Irizarry* v. *E.L.A.*, 106 D.P.R. 357 (1977).

■ En *Tropigas de P.R.* v. *Tribunal Superior*, 102 D.P.R. 630 (1974), resolvimos que la acción subrogatoria provista por el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 32) suspende para el obrero y sus beneficiarios, el término prescriptivo de la acción de daños y perjuicios del Art. 1868(2) del Código Civil, por lo que no procede la defensa de prescripción aquí promovida por el Estado.

■ El Fondo del Seguro del Estado autorizado a subrogarse por el citado Art. 31, contra el tercero causante de daño, puede demandar al Estado Libre Asociado cuando éste fuere tal tercero. Hay suficiente consentimiento para tal acción en el Art. 2(a) de la Ley Núm. 104 de 29 de junio de 1955 (32 L.P.R.A. sec. 3077) que autoriza acciones por daños y perjuicios a la persona hasta la suma de $15,000.00 causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia; y por el precepto que con-

cuerda con éste, introducido por dicha Ley Núm. 104 de 1955 en el Art. 1803 del Código Civil (31 L.P.R.A. sec. 5142), ordenando su texto presente que la obligación de reparar el daño causado por acción u omisión, mediando culpa o negligencia, es exigible no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se deba responder, y que "[e]l Estado es responsable en este concepto en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular." *Cf. Ramos Rivera* v. *E.L.A.*, 90 D.P.R. 817 (1964); *Valentín* v. *Jaime*, 86 D.P.R. 774, 775 (1962). Es indicio adicional de la procedencia de esta acción subrogatoria el hecho de no aparecer incluida en la lista de las llamadas acciones no autorizadas del Art. 6 de la citada Ley Núm. 104 de 1955.(³) La inmunidad del Estado contra reclamaciones por daños se ha reducido a aquellas originadas en actos criminosos cometidos intencional o deliberadamente por sus funcionarios, agentes o empleados. *Montes* v. *Fondo del Seguro del Estado*, 87 D.P.R. 199 (1963).

*Se expedirá el auto y la resolución recurrida será confirmada.*

El Juez Asociado Señor Torres Rigual no intervino. El Juez Asociado Señor Negrón García concurre en el resultado.

---

(³) "Nada en las secs. 3077 a 3084 de este título ni en la sec. 5142 del Título 31 autoriza las acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:

(a) en el cumplimiento de una ley o reglamento, aun cuando éstos resultaren ser nulos;

(b) en el desempeño de una función de carácter discrecional aun cuando hubiere abuso de discreción;

(c) en la imposición y cobro de contribuciones;

(d) constitutivo de acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, persecución maliciosa, calumnia, líbelo, difamación y falsa representación e impostura;

(e) ocurrida fuera de la jurisdicción territorial del Estado;

(f) en el desempeño de operaciones de combate por las fuerzas navales o militares en casos de guerra, invasión, rebelión u otra emergencia, debidamente declaradas como tales por las autoridades pertinentes." 32 L.P.R.A. sec. 3081.